BIGGERS MOBLEY *vs.* T. K. CURETON AND OTHERS.

To a bill in equity to enforce a purely legal demand the Statute of Limitations is inapplicable, if it would be inapplicable to an action at law upon the same demand.

The Statute of Limitations being inapplicable to an action at law against the heirs of an intestate, to recover a specialty debt of the intestate, it cannot be pleaded to a bill in equity against the heirs to subject real estate descended to the payment of a debt due by sealed note. If, however, the plaintiff in such a bill has been guilty of laches, the Court may refuse him its aid and bar the equitable remedy at a period short of that which would raise the presumption of payment.

Real estate of an intestate was partitioned among his heirs in 1855, a large amount of assets being left in the hands of the administrators to pay the debts. On a sealed note of the intestate, due in 1854, judgment by default was recovered against the administrators in 1860. Execution was issued and lodged with the Sheriff, but nothing more was done to enforce payment until 1868, when this bill was filed to subject the real estate in the possession of the heirs to the payment of the debt. Both the administrators had died insolvent not long before the bill was filed: *Held,* that the plaintiff was barred by his laches of his remedy in equity, and the bill was dismissed without prejudice to plaintiff's right to pursue the heirs by action at law.

BEFORE THOMAS, J., AT LANCASTER, OCTOBER TERM, 1869.

Thomas K. Cureton, the elder, died intestate on 3d July, 1854, leaving a large estate, real and personal. His heirs and distributees were his widow, Eliza R. Cureton, and his five children, James E. Cureton, Thomas K. Cureton the younger, Samuel J. Cureton, Virginia Cureton, and Eliza J. Cureton—the three last named being minors. Samuel B. Massey and James E. Cureton became his administrators. Shortly after the death of the intestate proceedings in equity were commenced for partition of his estate, and in De-

cember, 1854, a writ for that purpose was issued. Under this writ a large portion of the lands, consisting of several plantations and one hundred and twenty slaves, were divided between the widow and children, and on the 26th June, 1855, the return to the writ was confirmed by the Court.

· A large amount of assets, consisting of thirty-seven slaves, valued at from $20,000 to $25,000, horses, mules and farming implements of the value of $10,000, ten thousand bushels of corn, worth $1 per bushel, pork valued at $2,000, and grain and fodder, valued at from $1,600 to $2,000, was not divided, and remained in the hands of the administrators to pay debts. Some three hundred and fifty or four hundred bales of cotton, or the proceeds thereof, and a large amount of debts due the intestate, were also retained by the administrators for the same purpose.

A portion of the real estate of the intestate was also left undivided. This was afterwards sold under an order of the Court made in a cause wherein the administrators were plaintiffs and the heirs-at-law were defendants, and by a further order, made in the same cause in June, 1859, the proceeds of the sale, amounting, on the 8th January, 1860, to $13,685.03, were turned over to the administrators, they giving bond with sureties for the due application of the same.

· On the 22d May, 1859, the administrators filed another bill against the heirs of the intestate. It was entitled a bill for contribution and relief, and seems to have been filed to subject some of the assets in the hands of defendants therein to the payment of debts. The record in this case was destroyed.

The intestate was indebted, at the time of his death, to the plaintiff, Biggers Mobley, by sealed note, in the sum of $1,373.88. This note bore date February 23, 1854, and fell due March 18, 1854. The interest thereon was payable annually. The administrators made three small payments on the note, amounting, in the aggregate, to $150, but failing to pay the balance, the plaintiff, on the 3d March, 1860, commenced an action at law thereon against them, and no appearance being entered he recovered judgment by default, at Fall Term, 1860. The judgment was for $1,959.53, besides costs. It was entered 16th October, 1860, and on the same day execution against the administrators was issued and lodged with the Sheriff.

Samuel B. Massey, one of the administrators, died intestate, and utterly insolvent, in November, 1866, and John M. Beaty sued out letters of administration on his estate. James E. Cureton, the

other administrator, also died intestate and insolvent, in July, 1868.

The plaintiff's execution having been renewed on the 19th October, 1866, was returned *nulla bona* on the 19th November, 1868.

Eliza R. Cureton, the widow of the intestate, died in 1862, leaving a will, by which she appointed Thomas K. Cureton, the younger, executor. He proved the will, and qualified thereon.

Virginia, one of the daughters of the intestate, intermarried with Francis D. Green; and Eliza J., the other daughter, intermarried with James M. Green.

The bill in this case was filed on the 28th November, 1868, against Thomas K. Cureton, the younger, Samuel J. Cureton, Francis D. Green and Virginia his wife, James M. Green and Eliza J. his wife, and John M. Beaty, and its object was to subject the real estate which had been partitioned in 1855 to the plaintiff's debt.

The principal grounds of defence were the Statute of Limitations and the laches of the plaintiff, in failing to pursue the administrators with reasonable diligence.

His Honor the presiding Judge held that the plaintiff's demand against the heirs of the intestate was "only an *indebitatus assumpsit;*" he, therefore, sustained their plea of the Statute of Limitations, and dismissed the bill.

The plaintiff appealed, and now moved this Court to reverse the decree of the Circuit Judge, and grant the relief prayed for in the bill, on the grounds:

1. Because the plaintiff's claim was not barred by the Statute of Limitations.

2. Because the plaintiff was entitled to the relief he sought against the heirs-at-law of Thomas K. Cureton, deceased.

3. Because, in any event, plaintiff was entitled to a decree against the administrator *de bonis non* of T. K. Cureton, deceased.

4. Because the decree was founded in error as to the facts in evidence, in this: That the bill for contribution, on the part of the administrators, referred to in the decree as still pending, was abated by the death of James E. Cureton, surviving complainant, and was so marked at the February Term, 1869; and that the same was filed May 22, 1859, within four years after the order confirming the partition, and not in 1860, as stated in the decree.

*Kershaw,* for appellant:

Is the Statute of Limitations a bar? Plaintiff argues that it is not.:

1. Because the cause of action is a specialty, and twenty years had not elapsed. The analogy is to an action of debt on a specialty.—3 Bac. Abr. Tit. Heir and Ancestor (F) pp. 25, 26; Stat. 5, Geo. 2, ch. 7; 2 Stat., 571; Stat. 3 and 4, W. & M., ch. 14, (2 Stat. 534); *Vernon* vs. *Valk*, 2 Hill Ch., 259; *Cumming* vs. *Berry*, 1 Rich. Eq., 114; *Smith* vs. *Smith*, McM. Eq., 126; *McMullen* vs. *Brown*, 2 Hill Ch., 466; *Fripp* vs. *Tulbird*, 1 Hill Ch., 144: *Singleton* vs. *Moore*, Rice, 128, 130.

2. The analogy is not with the action of "*indebitatus assumpsit.*" In that class of cases there is no direct right to action against the party, legatee or distributee.—*Trescott* vs. *Trescott*, 1 McC. Ch., 417; *Buckhan* vs. *James*, Speer's Eq., 376; *Brewster* vs. *Gillison*, 10 Rich. Eq., 437; *Miller* vs. *Mitchell*, Bail. Eq., 441; *Massey* vs. *Massey*, 2 Hill Ch., 496; *Alexander* vs. *Williams*, 2 Hill, 522; *Fisher* vs. *Tucker*, 1 McC. Ch., 176; *Beckford* vs. *Wade*, 17 Ves., 97; *Bird* vs. *Houze*, Speer. Eq., 250.

*Moore*, for Samuel J. Cureton :

1. The defendant, Samuel J. Cureton had been in the peaceable adverse possession of the land derived from his father for more than ten years. This possession would have conferred title as against the strongest paper muniments of title in another.—Acts of 1712, 2 Stat., 584; and 1824, 6 Stat., 238. A *fortiori* where there is nothing to oppose but a mere implied trust. His title would have been perfect even if the land had been bound by the lien of a judgment.—*Lamar* vs. *Raysor*, 7 Rich., 511.

2. His position is that of an executor who has settled up an estate without notice of a claim. It is in the nature of a demand upon him to refund; to which the Statute of Limitations is a bar after four years.—*Miller* vs. *Mitchell*, Bail. Eq., 441.

3. He was not bound by a judgment against the administrators.—*Vernaud* vs. *Valk*, 2 Hill Ch., 257.

4. His land, being in his exclusive possession, could not have been levied on and sold under execution against the administrators.—*Bird* vs. *Houze*, 1 Spear. Eq., 253.

5. He held the land, subject merely to an implied trust, to pay the debts, which, after the lapse of four years, was barred.—*Buchan* vs. *James*, Spear. Eq., 382; *Alexander* vs. *Williams*, 2 Hill, 522;

*Massey* vs. *Massey*, 2 Hill Ch., 496 ; *Tucker* vs. *Tucker*, 1 McC. Ch., 176 ; *Miller* vs. *Mitchell*, 1 Bail. Eq., 437.

6. A bond creditor no exception to the rule. Four years a bar to a claim by a creditor against a legatee whose creditors have been called in under a bill:—*Brewster & Dickinson* vs. *Gillison, et al.*, 10 Rich. Eq., 435.

Personal estate primary fund for the payment of the debts. Where a surety to an administration bond had paid a debt, it was held that he could not resort to the real estate to be refunded.—*Richardson* vs. *Inglesby*, 13 Rich. Eq., 60.

*Allison*, for J. M. Green and wife, and F. D. Green and wife.

1. Appellees took, and they now hold, the property derived by them from the estate of T. K. Cureton, by virtue of the decree for partition, and they have had vested rights, by the effect of said decree, in said property, ever since the 5th of December, 1854. *Huson* vs. *Wallace*, 1 Rich. Eq., 1.

2. The claim attempted to be set up by the appellant is now (after the lapse of fourteen years since the property was vested by the said decree) barred by the Statute of Limitations.—*Buchan* vs. *James*, Speer Eq., 375 ; *Brewster* vs. *Gillison* and others, 10 Rich. Eq., 435 ; *Massey* vs. *Massey*, 2 Hill Ch., 476 ; *Alexander* vs. *Williams*, 2 Hill Ch., 522 ; *Fisher* vs. *Tucker*, 1 McC. Ch., 176.

3. The debt of appellant is not a bond debt against the distributees and heirs-at-law of T. K. Cureton, deceased ; but their liability arises from the doctrine of the common law as to *indebitatus assumpsit* for money had and received. And if they hold the property under trust, the trust is merely implied and liable to the bar of the Statute of Limitations.—*Buchan* vs. *James*, Speer, 375, and *Brewster & Dickson* vs. *Gillison*, 10 Rich. Eq., 437.

The distributees hold the property by virtue of the decree of the Court aforesaid, which must, on direct application, be vacated before the appellant can have any right to establish his demand ; and it is now too late to do this, more than four years having elapsed since the decree was made.—*Brewster & Dickson* vs. *Gillison*, 10 Rich. Eq., 437 ; *Clark* vs. *Jenkins*, 3 Rich. Eq., 339 ; 1 Rich. Eq., 6 ; Bailey Eq., 468.

5. The argument of appellant that his bill is a mere continuation of the bill by the administrators of Cureton, (which abated,) is fallacious. A continuance to prevent the bar of the statute, must be a continuance of the same suit or action from first to last, and a several

Columbia, April, 1870.

writ is not a continuance of a joint writ. See *Chapman* vs. *Mayrant*, 2 Speer, 584 ; *Ex parte Hunks*, Cheves, 203.

Nov. 15, 1870. The opinion of the Court was delivered by

WRIGHT, A. J. The Statute of Geo. II, (2 Statutes at Large, 571,) makes land liable to and chargeable with debts by simple contract and specialty "in like manner as real estates are by the law of England liable to the satisfaction of debts due by bond or other specialty."

If the action on the bond here had been at law against the heir it would not have been barred, except from the presumption of payment arising from the lapse of twenty years, or a shorter period, with such circumstances as would contribute to strengthen it.

To prevent circuity of action, and particularly where there may be several heirs, having estates of different value, all derived from the same source, Courts of Equity take jurisdiction by allowing the creditor to call on the heirs who had lands descended, so that the administrator who held assets sufficient for the payment of the debt might make satisfaction to the heir of the amount he may be found bound to pay. Personal assets being first liable for the debt of the ancestor, the heir may require a reimbursement from the fund primarily answerable.

The Court of Equity, in the administration of its exclusive jurisdiction, does not consider itself tied down by the strict rules which apply in a Court of common law in regard to the Statute of Limitations. It adopts them, however, where the principles on which they are founded satisfies it that they should be entertained, and they are then by analogy applied.

When the demand, however, is purely a legal one, but so affected with equitable considerations that it is bound, according to its practice, to take cognizance of the whole case presented, it applies the statute "in the same manner as a Court of law would apply it if the debt were sued in that tribunal."—*Cumming* vs. *Berry*, 1 Rich. Eq., 121.

The demand of the plaintiff is on a sealed note of the intestate, executed in February, 1854. The Circuit Judge, in his decree, held that, as against the heirs, the claim was only an *indebitatus assumpsit*, and, therefore, barred by the Statute of Limitations.

The decisions cited by the counsel for the appellees, in the argument here, have relation to an entirely different class of cases. Where the creditor never had an immediate right of action against

10A

the legatee or distributee, but, having ex hausted his remedy against the personal representative, is allowed to set up his equity agains t such legatee or distributee holding property to which, *ex equo et bono,* he is entitled. The case of *Brewster & Dickson* vs. *Gillison,* 1 0 Rich. Eq., 435, which is the last reported in our State on the subject, and which was among those so quoted, decides no more than that the right of the creditor to subject the property in the han ds of the legatee to the payment of his debt, is barred, if the legatee has had exclusive possession for four years. There never was a right of action at law against the legatee on the bond, but there is such right against the heir.

The Chancellor delivering the judgment of the Court in the said case, says : "Their liability is not by bond, and arises only from their possession of estata as volunteers, which, in the hand of their testator, was liable for the payment of his debts before his donation could take effect." They were neither heirs or devisees. "The demand of the creditor against the legatees is a mere personal demand for money, and the same provision will apply that would bar such a demand at law."—*Miller* vs. *Mitchell,* Bail. Eq., 441.

This Court does not concur with the judgment of the Circuit Judge, that the demand here against the heirs was only an *indebitatus assumpsit,* and that it was barred by the statute.

It does not follow, from this reversal of the said judgment in regard to the application of the statute by the Circuit Judge, that the plaintiff is entitled to the relief which he asks.

The primary fund for the payment of the debts of a deceased is the personal estate. That must first be pursued in the hands of the personal representative, until exhausted, or until it appears that, by proper diligence on the part of the creditor, it cannot be made available for his demand. When, having no judgment against the heir, but holding one against the administrators, he asks the aid of equity to subject the lands held by the heirs to the payment of his said judgment, if it appears that his failure to make satisfaction of his debt has been the consequence of his own laches, without prejudice to his pursuit of the heirs as he may be advised on his sealed note in a Court of Law, the aid of the Court of Equity will not be extended to him.

What are the facts here ? The intestate died on July 3d, 1854, leaving a large real and personal property. The note of the testator, held by the plaintiff, was due the March before. Samuel B. Massey and James E. Cureton administered on the estate, for the parti-

tion of which, in December, 1854, a writ was issued, the return to which was confirmed on June 26, 1855. The administrators were parties to the proceedings, and a large amount of property was, by the order of the Court, transferred to them for the payment of the debts. Included in the assets, which went directly to the administrators for this purpose, were thirty-seven negroes, horses, mules and farming implements, and which (independent of the negroes, whose value was proved to be from $20,000 to $25,000,) sold for about $10,000. Besides the debts due the intestate, which went into their hands for collection, they received the proceeds of the cotton crop of 1854, which, with the portion of that of 1853 remaining, amounting in all to from 350 or 400 bales, if not more, 10,000 bushels of corn, worth $1 per bushel, pork, valued at $2,000, and grain and fodder, worth from $1,600 to $2,000.

With the view apparently of providing full and adequate means for the payment of the debts, the Court, by an order in a bill, entitled " J. E. Cureton and S. B. Massey, administrators, vs. Eliza B. Cureton, T. K. Cureton, et. al., bill for sale of real estate, and to pay debts," made in June, 1859, directed the Commissioner to turn over to the said administrators certain bonds-taken on sale of real estate of the intestate made by the Commissioner, aggregating, with interest to January 8, 1860, $13,685.03, on their executing bond, with sureties for the due application of said proceeds; all of which was done.

The impression derived from the bill is, that the plaintiff had knowledge of these facts. Shortly after the death of the intestate, he gave notice of his debt to the administrators, and received some small payment on account, but did not bring suit against them until March Term, 1860, and no appearance or plea being entered, he obtained his judgment in October, 1860, and lodged his *fi. fa.* on the 16th of that month.

Without proceeding under it to levy on any of the lands so allotted in severalty, (*Murphy* vs. *Nelson*, 1 Brev., 476 ; *Martin* vs. *Latta*, 4 McC., 128,) which, at least, would have been notice to the heirs that a specialty debt of their intestate had not been paid by his administrators, and without any proceeding against the administrators, who had admitted sufficient assets by allowing the recovery of a judgment by default, to obtain a return of *nulla bona*, which would have been such evidence of a *devastavit* as would allow a resort to the administration bond, he remained inactive until, as he alleges, he was prevented by the force of the supposed stay law

from taking any further action. There was no such impediment in his way certainly from October, 1860, to December, 1861. In May, 1866, the stay law, under which he seeks excuse for his delay, was declared unconstitutional, and, therefore, void, the two administrators being both then alive. Up to Massey's death, in November, 1866, no proceeding was taken against him, nor any against his survivor, Cureton, who did not depart this life until July, 1868. After his death, a return of *nulla bona* was had in November, 1868, and immediately thereupon this bill was filed. Both the administrators died insolvent.

Chancellor Dunkin, in *Godhue* vs. *Barnwell*, Rice Eq., 239, says: " In *Vernon* vs. *Valk and Wife*, 2 Hill Ch., 267, it was determined that a bond creditor might maintain his action in this Court against the heir-at-law. But the principle was distinctly recognized that, when the creditor comes into equity, it was requisite that the executor should be made a party." Why? Because the personal estate is the primary fund for the payment of the debts, and before the heir can be made to answer in *this* Court, he must have the opportunity afforded him to require an account from the administrator of that primary fund which is to respond to him in the event of his being required to pay the debt.

Here, since the judgment, no proceeding was had against the administrators in their lifetime, and there was nothing to prevent a resort to the Court of Equity from the lodgment of the *fi. fa.* to their death.

The plaintiffs can gain nothing from the fact that the administrators supposed themselves in advance for the estate, and, on 22d May, 1859, filed a bill against the heirs and distributees for contribution and relief, in which, apart from an order for an account, which, it appears, never was completed, if ever taken, no action was had until June, 1868, after the death of Massey, when an order, on motion of the surviving administrator, was taken, referring all matters of litigation to the umpirage of G. W. Williams, Esq. This suit abated by the death of Cureton, in 1868, and was never revived. The very fact of the pendency of the said bill, and the knowledge it communicated, was calculated to excite prompt and quick action by the plaintiff against the administrators and their sureties after he had obtained his judgment. Not only had he a remedy through the administration bond, but also through that which was given to the Commissioner in Equity when the proceeds of the real estate sold was turned over to the administrators in aid of the payment of debts.

If either party is to suffer from the difficulty of ascertaining who were the sureties to the administration bond, why should the consequences of that want of information prejudice the heirs? They never stood in a position to claim its benefit when the means of such information were at hand; while, on the .other side, the plaintiff, if he had not allowed his judgment to remain inactive, even while there was no stay law in the way, could have brought his action on the bond, suggesting a *devastavit*, and thus all the results of the destruction of the bond and of the books of the Ordinary's office, in February, 1865, would have been avoided.

There was still another remedy open to the plaintiff, certainly to December, 1861, and which was probably unaffected by the stay law during the whole period of its supposed existence. What prevented the filing of a bill by the plaintiff, calling on the administrators to account, and making parties to it the sureties on the administration bond and the bond executed to the Commissioner on the receipt of the proceeds of the real estate sold by order of the Court, and turned over to the administrators, to be applied to the debts?— *Gayden* vs. *Gayden*, McM. Eq., 435; *McBee* vs. *Crocker*, Ibid, 485.

At the death of the intestate, besides his wife, he left five children, one of which was then sixteen years of age, another eleven, and another five. From the order confirming the partition to the filing of the bill over thirteen years have elapsed, and looking to the course of the plaintiff, marked, as it has been, with such *laches*, the aid sought from the Court of Equity cannot be accorded.

It is ordered and adjudged that, without prejudice to the plaintiff in any remedy he may be advised to pursue in a Court of law, his bill, so far as it seeks here to make the heirs of the late T. K. Cureton liable for his said debt, by reason of lands descended to them, be dismissed; each party to the cause paying his own costs as accrued up to this date.

That the bill be retained, so far as the plaintiff, or any other creditor now a party, or hereafter called in, may desire an account of the administration of the estate of the said T. K. Cureton, either from his immediate administrators, or the administrator *de bonis non*, with leave to move the Circuit Court for Lancaster County for the orders necessary therefor.

*Moses*, C. J., concurred.