NEW-YORK,
May, 1831.

JACKSON, *ex dem.* Catharine Hoogland and others, *vs.* VAIL.          Jackson
                                                                       v.
                                                                       Vail.

Where a *patent* for a lot of land was granted in 1820, to a revolutionary offi-
cer, in pursuance of an act of the legislature of that year, although the act
declared that the patent should have the like effect as to the title to the lot
as if the same had been issued in 1790, *it was held*, that a possession, under
claim of title for 35 years, could not be set up as *adverse*, to bar the right
to recover in an action of ejectment, by the heirs of the patentee.

An admission of one of several grantors, as to the execution and contents of
a deed, is admissible evidence, where a party claiming under such deed
has entitled himself to give secondary proof, on the ground of the deed be-
ing lost or destroyed.

A party proving the contents of a lost deed, to which there are subscribing
witnesses, cannot be required to produce the witnesses, unless it is shewn
that he knows who were the subscribing witnesses.

THIS was an action of ejectment tried at the Onondaga
circuit, in September, 1829, before the Hon. DANIEL MOSE-
LEY, one of the circuit judges.

The lessors of the plaintiff are the heirs at law of Captain
Jeronimus Hoogland, of the cavalry of the army of the United
States, during the revolutionary war. On the trial of the
cause they produced *letters patent* for lot No. 18, *Marcellus*, of
which the premises in question are a part, bearing date the
8th of August, 1820. This grant was made in pursuance of
an act of the legislature, *Session Laws of* 1820, *page* 158,
which directed the issuing of the same, and declared that the
letters patent so to be issued should be deemed and taken in
law to have the like effect as to the title to the lot granted, in
all respects, in all courts and places, as if the same had been
duly issued on the 8th day of July, 1790. Captain Hoogland
died in 1788, leaving three daughters. *Catharine*, who at
the time of the trial was between 70 and 80 years of age;
*Ann*, who married *Charles Guyon;* and *Elizabeth*, who married
*Willian Hopkins*. The lessors of the plaintiff are *Catharine
Hoogland* and the descendants of her sisters. The defendant
offered to prove that as long since as 1794, possession was ta-
ken of the premises in question under claim of title derived
from *Guyon* and *wife*, and the two other *daughters* of Captain
Hoogland; and that such possession had been continued

down to the time of the trial. This evidence was objected to by the counsel for the plaintiff, but it was received by the judge, and satisfactorily established the fact offered to be proved. The defendant produced in evidence an article of agreement between *Abraham Fowler*, of the city of New-York, of the one part, and *Josiah Buck*, of the other, bearing date 30th December, 1793, whereby Fowler covenanted to convey to Buck lot No. 18, Marcellus, by a good warranty deed, upon receiving $825, in certain instalments; upon which instrument various payments appeared endorsed, the last of which is in full bearing date 23d December, 1797. Next he produced an agreement between *Josiah Buck*, of the one part, and *Asa Bacon* and others, bearing date 6th March, 1794, whereby Buck agreed to convey to Bacon and his associates 400 acres, part of lot No. 18, Marcellus; which was followed up by a warranty deed, bearing date 23d December, 1797, from *Abraham Fowler* to Bacon and his associates, of the 400 acres contracted to be sold to them by Buck, and then sundry conveyances, down to the defendant. To lay the foundation for secondary evidence of a conveyance from the heirs of Captain Hoogland to Fowler, the widow of *Abraham Fowler*, was called, and testified that her husband had a deed of lot No. 18 from Guyon and wife and the two other daughters of Captain Hoogland; that she saw it in 1793, and that subsequently it was left by her husband with David Williamson, of New-York, as security for money lent; that Williamson died shortly thereafter, and Hector Scott appointed his administrator. Another witness proved that Hector Scott was also dead, and that a fruitless search had been made, under the direction of his son, his administrator, amongst his papers for the deed. The plaintiff's counsel then offered to prove by *Josiah Buck* the contents of the deed; which evidence was objected to by the defendant's counsel, because sufficient proof of the loss of the deed had not been given, and that the subscribing witnesses to the deed should be called to prove its execution. The objection was overruled. *Buck*, the party who, in 1793, contracted with Fowler for the purchase of lot No. 18, testified that at the time of his contract, Fowler exhibited to him a deed for that lot from the heirs of Captain Hoogland. He

NEW-YORK,
May, 1831.

Jackson
v.
Vail.

did not remember how many signers there were to the deed, but thought there were three or four; he read it, and was satisfied it conveyed a good title to the lot; there were two subscribing witnesses to the deed, but who they were he did not recollect. Another witness testified that in 1811 he and one of the tenants of the land went in search of the deed, and they and Abraham Fowler, the grantee, called on *Catharine Hoogland,* one of the lessors of the plaintiff: *Charles Gayon,* the husband of *Ann Hoogland,* also accompanied them. Catharine told them that she and her sister had given a deed to *Fowler* for the lot, and had received their pay; that it was a handsome compensation; that the deed to Fowler was in the hands of Hector Scott, but that it would not make any odds where the deed was, the people on the lot would never be troubled. This evidence was also objected to, but received by the judge; it was given previous to the proof offered as to the contents of the deed. The jury found a verdict for the defendant, which, on the part of the plaintiff, was moved to be set aside.

*J. A. Collier,* for the plaintiff.

*M. T. Reynolds,* for defendant.

By the Court. The legal title to lot No. 18, Marcellus, was in the people previous to the 8th day of April, 1820. As no adverse possession could be set up against their right at that time, and as it could not have constituted a bar to the right of the people, if the title had continued in them down to the day of trial, and they had been the lessors of the plaintiff, it is difficult to conceive how it can be strictly interposed as a defence to this action. The letters patent have relation back to 1790, for the benefit of the *heirs* of Captain Hoogland, and of *bona fide purchasers* of his or their right to the lot, but not to defeat the very right intended to be secured by the act of the legislature. The patentee being dead, the property, by operation of the statute, descended in the same manner as if he had been in life on the 8th July, 1790, and the title had then vested in him. Those who have purchased after the 8th Ju-

ly, 1790, have acquired as valid a title as if the estate had actually vested in Captain Hoogland at that time.

If the defendant can defend his title, he must *do so as a purchaser.* He shows regular conveyances from *Abraham Fowler* down to himself. The only difficulty is as to Fowler's right. The evidence which was offered to show that he had title to the premises, is alleged to be insufficient to establish the fact. The defendant proved the acknowledgments of Catherine Hoogland, one of the lessors of the plaintiff, relative to the deed to Fowler. The evidence was objected to, but received by the judge. An exception was taken to this decision. The object of this evidence was to show the existence of the deed to Fowler; and as she was one of the lessors of the plaintiff, no good ground of objection is perceived to the evidence, when offered for this purpose; and even what she said in relation to the parties to it, and its contents, though drawn out by way of identifying the deed, may, with propriety, be resorted to, to determine its effect, if the defendant has laid the proper foundation for giving *parol evidence* of its contents. There is a manifest distinction between acknowledgments of parties going to show that a proper instrument has been executed to convey real estate, which is alleged to be lost or destroyed, and those which have their object to supply what is required by the statute of frauds to be *in writing,* or to show the invalidity of a perfect instrument. We think the decision of the judge in favor of receiving the acknowledgment of Catharine Hoogland was correct; the substance of which acknowledgment is, that she and her sister had given a deed to Abraham Fowler for the lot in question, and had received their pay for it, and that it was a handsome compensation. She further said that it would make no odds where the deed was, for the people on the lot would never be troubled. Another witness, Buck, testified that he saw the deed in Abraham Fowler's possession; it conveyed the lot in question, and had three or four names to it, as grantors, and had been acknowledged before Hughes, a master in chancery. There was sufficient evidence of the loss of the deed to admit parol testimony of its contents.

There was another objection to the evidence given of the contents of the deed, which was, that there being subscribing witnesses to the deed, they should have been called. If this objection would have been valid in another case, it cannot be sustained here. The witness who testifies concerning the deed, and proves that there were subscribing witnesses, could not tell who they were ; as their names could not be ascertained, it would have been impossible for the defendant to comply with what this objection seems to require of him. The loss of the deed put it as much beyond his power to call upon the subscribing witnesses as to read the deed itself.

*New trial denied.*