EPHRAIM V. HORN AND OTHERS, APPELLANTS, *v.* LOREN R. PULLMAN AND OTHERS, RESPONDENTS.

*Probate of will — admissions of devisees — when admissible — Improper rejection of evidence by surrogate — when his judgment reversed because of.*

The appellants contested before the surrogate the probate of the will of one Horn, on the ground of incapacity and of fraud and undue influence. The testator devised the property to a granddaughter and her husband, jointly. Upon the hearing, the counsel for contestant proposed to prove statements of the granddaughter, made at or about the time of making the will, that the testator ought to leave all his property to herself and husband; that she had consulted a physician as to his mental capacity; that he would do whatever she asked him; that they meant to have the property; which evidence was, upon the objection of the counsel for the proponents, rejected. *Held*, that this was error.

Where competent evidence has been rejected by the surrogate, his judgment or decree will not be reversed, unless, if such evidence had been received and a finding had been made in conformity thereupon, the court would have affirmed the decree.

APPEAL from a decree of the surrogate of Herkimer county, admitting to probate the will of Cornelius Horn, deceased.

Probate of the will was contested on the ground of the mental incapacity of the testator, and of fraud and undue influence practiced upon him by the beneficiaries under the will.

*H. J. Cookingham*, for the appellants.

*S. S. Morgan*, for the respondents.

MULLIN, P. J.:

The contestants utterly failed to make a case before the surrogate, establishing either a defective execution of the will, insanity of the testator, or that it was the result of undue influence on the part of devisees or other persons over the testator.

The most that can be said to be proved by the contestants is, that the testator was an old man laboring under some of the infirmities incident to old age, but his mind was sound and his capacity to make a will as good as that of the majority of persons of the same age.

He was suffering from a disease the effect of which was to weaken and ultimately to destroy his mind, but at and near the time when the will was executed he was able to transact ordinary business, and to understand the claims of the members of his family on his bounty.

By wills, prior in date to the one offered for probate, he had made a very different disposition of his property from that made by the one under consideration. This fact is entitled to considerable weight in determining the questions of capacity and undue influence, but if it is true that his children declined to take him to their houses and take care of him, and the devisees took upon themselves the burthen of caring for him, diseased and disabled as he was, it was natural that he should give them his property rather than to his children.

On the hearing, the contestants called as a witness Samuel W. Butterfield, who testified that he saw Mrs. Cornelius Pullman, one of the devisees named in the will, at his house in September, 1875, and had a conversation with her about the testator and his will.

The counsel for the contestant then asked the witness, " what was that conversation." The question was objected to by the counsel for the proponents as incompetent and immaterial and the objection was sustained.

The contestants' counsel then offered to prove by the witness that she had said they had got the property. They had got it so fixed that if the children of Horn contested the will, they would have to pay their own costs. He also offered to prove that she had stated that they had consulted a physician beforehand, to see if he was competent to make a will, and that her grandfather was a nice old man, and he would do any thing she asked him to ; these offers were severally objected to, and the objections sustained.

The contestants' counsel then offered to prove that Mrs. Pullman said to Jane Horn, that she (Mrs. P.) thought that what property her grandfather (the testator) has got, when he is done with it, he ought to will to Mrs. P. and her husband, as they were the ones that had worked for him, and done for him and waited on him; they were the ones that ought to have it, and they are going to have it, too. The evidence offered was objected to, and rejected.

The ruling of the surrogate upon these offers of evidence presents two questions, and these are :

First. Were the declarations of Mrs. Pullman admissible in evidence against herself and husband or against her alone ? and,

Second. If competent, was the evidence offered and rejected so material as that, if received, the surrogate might, upon it, in connection with the other evidence in the case, have refused to admit the will to probate ?

By the will, the farm and property were devised to Pullman and wife, jointly.

It is said, in 1 Greenleaf on Evidence, section 174, that in the absence of fraud, if the parties (plaintiff and defendant) have a joint interest in the matter in suit, an admission made by one is, in general, evidence against all, * * * and when several were both legatees and executors in a will, and also appellees in a question upon the probate of a will, the admission of one of them, as to facts which took place at the time of making the will, showing that the testatrix was imposed upon, was held receivable in evidence against the validity of the will. (*Jackson* v. *Vail*, 7 Wend., 125 ; *Osgood* v. *The Manhattan Co.*, 3 Cow., 612 ; *Atkins* v. *Sanger*, 1 Pick., 192 ; *Smith* v. *Sergent*, 2 Hun, 107.)

The evidence offered was improperly excluded.

We now come to the question, whether the decree of the surrogate should be reversed, because of the improper rejection of the evidence offered.

In *Clapp* v. *Fullerton* (34 N. Y., 190) the Court of Appeals held that, if in reviewing the proceedings before a surrogate, it is made apparent upon the whole case, irrespective of evidence improperly admitted, that the testator was clearly competent and that the will was properly admitted to probate, the court below was right in holding that the error was not fatal.

In thus deciding, the court must have assumed that the illegal evidence did not and could not impair the force of the competent evidence so as to justify the inference, that it operated prejudicially on the mind of the surrogate.

It seems to me, the same principle should be applied when competent evidence is rejected. The court sitting in review of the action of the surrogate should inquire whether, if the evidence rejected had been received and a finding in conformity therewith had been had, the court would affirm the decreee. If it would, then the decree should be reversed by reason of the rejection of the evidence offered, otherwise the error should be disregarded.

In this case, neither insanity nor undue influence was established by the contestants. The proof offered and rejected, although competent upon one or both of these questions, fell far short of establishing either, nor would it establish either when added to the other evidence in the case upon those issues.

The decree of the surrogate should be affirmed, with costs.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Decree of surrogate affirmed, with costs.