CASE No. 1000.

CONGDON v. MORGAN.

1. Defendant, claiming the land in dispute by adverse possession under color of title, traced a deed under which he held to the custody of a master of the court, and proved the death of the master and an unsuccessful search for it in the office of the master's successor; and then to show, by such deed, the extent of his claim, defendant offered secondary evidence of its contents, which was admitted by the trial judge. *Held,* that it was within the judge's discretion so to do.

2. When it is not known who were the subscribing witnesses to an alleged lost deed, other evidence may be received to prove that the lost instrument was a deed of conveyance.

3. Purchasers made entry upon the land under their deed, marked out their claim by survey and stakes, and upon the portion here in litigation built a wharf on which to land lightwood, &c., and erected a boat-shed, and used both wharf and shed. *Held,* to be such acts of possession under color of title as would ripen into title by possession.

4. Such purchasers were joint tenants and one died, and under order of court the property was sold and purchased by the survivor, who paid his bid in full, but took no deed. *Held,* that the survivor did not hold under a different legal title or by a disconnected right.

5. *Quere.* May not an assignee in bankruptcy, without any order of the court, sell the bankrupt's interest in lands held adversely by another?

6. A party in possession of lands which were sold as the estate of a bankrupt by the assignee in bankruptcy, gave no notice of an adverse claim and bid for the property; neither he, nor those claiming under him, can afterwards object that the sale was unauthorized, because that he was an adverse claimant.

7. Action was brought against A for the possession of land held adversely by him for less than ten years, but before trial he died. The plaintiffs in such action, having matured title by possession (as the verdict here shows), made their entry upon the land, and, subsequently, were ousted by the heirs-at-law of A. *Held,* that such heirs could not claim that their possession thus acquired was a continuation of A's possession cast upon them by descent.

Before HUDSON, J., Georgetown, November, 1879.

This was an action for the recovery of land and for damages, commenced January 16th, 1879, by George R. Congdon and Benjamin J. Hazard, plaintiffs, against Louisa Morgan, Joseph L. Morgan, Kate L Garber and her husband, James R. Garber. The defendants, except James R. Garber, were the heirs of Arthur Morgan, deceased. Verdict was for plaintiffs for the land in dispute.

This land was on a peninsula, just opposite the town of Georgetown, included in a grant to Robert Screven in 1711. The plaintiffs claimed by adverse possession under color of title. They purchased from R. E. Fraser, assignee in bankruptcy of W. W. Shackelford, on November 26th, 1874; Fraser sold without any order from the United States District Court. The land was included in Shackleford's schedule in bankruptcy. Shackelford purchased in September, 1856, at a sale made by order of the Court of Equity for partition between said Shackelford and Arthur Magee, deceased, and paid his bid in full, but took no deed from the master. Shackelford and Magee purchased from R. F. W. Allston in 1853.

The Allston deed was not produced. Shackelford testified that it went into the possession of James Tupper, master in equity, in 1856, as a part of the evidence in the partition proceedings then pending between himself and the estate of Arthur Magee. Magrath & Magrath were the attorneys through whose

hands it passed; that he had called on such attorneys and had searched the master's office but could not find it, and that Mr. Tupper was now dead. Defendant objected to secondary evidence of the contents of this deed, without better proof of its loss; but the Circuit judge admitted the evidence. Shackelford then testified that he knew the deed was signed, sealed and delivered by R. F. W. Allston in the presence of two witnesses, but he could not now remember who the witnesses were. The partition proceedings were also introduced, which stated the deed and the boundaries of the land by it conveyed. Shackelford testified that soon after the purchase from Allston they had the land surveyed, put stakes at the four corners, and upon one corner (the part here in dispute) built a wharf for landing lightwood, &c.; and in 1856 the present plaintiffs, by permission of Shackleford, erected a boat-shed at the same corner. Wharf and shed were used off and on from the time they were built.

Defendants proved that Arthur Morgan contracted with one Myers, March 26th, 1866, to purchase this lot of land, and immediately entered upon it, erected turpentine works and continued to use it until the works were burned in January, 1877. He received deed November 2d, 1874. Action was brought by these plaintiffs against Morgan, October 6th, 1875, for the possession of this land. Morgan died in August, 1878. These plaintiffs then took possession and erected a building, but were afterwards ejected by the agent of the defendants, who tore down the building and carried it off. This action was then instituted.

Arthur Morgan gave no notice to R. E. Fraser, the assignee of Shackleford's bankrupt estate, that he (Morgan) made claim to this land or any part of it; but, on the contrary, authorized Fraser to bid $100 for him. Congdon and Hazard purchased for $115.

At the close of plaintiffs' testimony defendants moved for a non-suit, which was refused.

The judge was requested by the defendants, in writing, to charge as follows:

1. If you believe, from the testimony, that at the time of the assignment of Shackelford in bankruptcy to R. E. Fraser, Arthur Morgan was in possession of the land in question, using it

as his own, and claiming to be the owner thereof, then the sale by the said R. E. Fraser, as assignee in bankruptcy, was without authority and conferred no title upon the plaintiffs, unless he had previously demanded the possession and held it in his hands at the time of such sale.

2. If you believe, from the testimony, that Arthur Morgan was in possession of this land at the time of the sale by the assignee, Fraser, to plaintiffs, claiming the land, the said assignee had no authority, without an order of the court, to sell the land, and such sale is a nullity, conferring no title on the plaintiffs to the same.

The judge refused so to charge, but qualified the requests as follows. As to the first: " Held, that possession alone was not notice to assignee of an encumbrance, and the assignee had a right to sell, unless he had other knowledge of an encumbrance." As to the second request: " If the adverse claim were made known to the assignee, he had no authority to sell without an order of court." The judge also charged the jury, *inter alia:* That the entry by Shackelford and Magee, under the deed from Allston in 1853, the marking out of their claim under said deed by the survey then made, the putting of a stake at each corner of their claim, the building of the wharf on one corner of the same, and that corner being on the part of the land in dispute in this action, the erection of a shed on said wharf in 1856, and the use of said wharf and shed or house (as described by the witnesses) by Shackelford and Magee and their tenants—were such acts of possession, under color of title, as would ripen into a title by possession to the land in dispute, and to all the land embraced within the four stakes before the entry of Morgan in 1866. That Morgan, the ancestor, therefore, entered after the grantor of the plaintiffs had acquired title, and plaintiffs brought their action before his possession had ripened into a title by possession, viz., on October 6th, 1875.

That the sale of the land for partition under the equity proceedings and the purchase thereof by Shackelford, but who got no title deed therefor from the master, did not affect his previous right, as he was already in by his previous title as a co-tenant with Magee—not to any particular part of it, but to a moiety of

each and every part. His Honor further charged and instructed the jury that the possession of A. Morgan of the disputed land from March, 1866, to the time of his death, in August, 1878, would not constitute title under the statute of limitations, because the plaintiffs had asserted their claim to the land by their action against Arthur Morgan, commenced October 6th, 1875, before the bar was complete; and when this action abated by his death in August 1878, they, within a reasonable time, commenced the present action for the same land against his devisees—that the statute stopped running on October 6th, 1875, in favor of A. Morgan.

To these charges and refusals to charge, defendants excepted; and from the judgment rendered appealed to this court upon the several exceptions taken in the court below.

The appeal was heard in this court January 16th, 1880, and, being ordered for re-argument was again heard December 10th, 1880.

*Mr. R. Dozier,* for appellants.

*Mr. Joseph T. Walsh,* contra.

March 15th, 1881. The opinion of the court was delivered by

McIVER, A. J. This was an action to recover possession of a tract of land to which neither party could show a paper title—both claiming by possession. The land was originally granted to Robert Screven on August 11th, 1711. The plaintiffs relied, as color of title, upon a deed from Allston to Shackelford & Magee, alleged to have been executed in 1853, but which was lost. After introducing some evidence of the existence and loss of the deed, the plaintiffs proposed to introduce evidence of its contents, which was objected to, but the objection was overruled and an exception was duly taken by the defendants. Under this deed Shackelford & Magee had a survey of the land in dispute made; placed stakes at each corner of their claim; built a wharf upon it; permitted tenants to erect a shed on the wharf, and made such use of it as is described in the testimony set out in

the " case." In 1856 the land in question was sold by the master in equity under an order of the court passed upon the hearing of a petition, which is likewise set out in the "case" filed by the administrator of Magee, who had died in the meantime, with the concurrence and assent of Shackelford. At this sale, which was made on September 11th, 1856, Shackelford bid off the land and paid the purchase money, but took no titles from the master, and continued to use the land as before. Things remained in this condition until March 26th, 1866, when Arthur Morgan, under whom the defendants claim as heirs-at-law and devisees, took possession of the land, claiming to have bought and paid for it at that time, though the deed made by the attorney in fact of his vendor was not executed until November 2d, 1874, and he remained in possession up to the time of his death in August, 1878. On February 28th, 1874, Shackelford, having been adjudicated a bankrupt, made an assignment of his estate, including the land in dispute, which was afterwards sold by the assignee, without an order from the Bankrupt Court, and bought by the plaintiffs. It appears that Arthur Morgan was aware of this sale, and not only interposed no objection to it but authorized an agent to bid for him nearly the amount at which it was knocked down to the plaintiffs. Arthur Morgan continuing in possession, the plaintiffs commenced an action against him on October 6th, 1875, to recover the possession of the land, which was pending at the time of his death, when it abated. After his death the plaintiffs took possession of the land and erected a building on it, when they were ousted by the act of the agent of the defendants, and this action was commenced against them on January 16th, 1879. The jury found a verdict for the plaintiffs, and judgment being entered thereon, the defendants have appealed ; and we propose now to consider the several questions raised by the appeal.

The first question is whether the Circuit judge erred in admitting secondary evidence of the contents of the alleged lost deed from Allston to Shackelford & Magee. Appellants contend : 1st. That there was not sufficient evidence of the loss of the deed. 2d. That there was no competent evidence of the existence of the deed as a *genuine* instrument.

In *Floyd* v. *Mintsey,* 5 *Rich.* 372, 373, it is said: "No uniform rule can define the requisite evidence to establish the loss. This must depend on the circumstances of each case." And in *Berry* v. *Jourdan,* 11 *Rich.* 75, Whitner, J., in delivering the opinion of the court, upon a question similar to the one now under consideration, uses this language: "There are certain general propositions bearing on the question sufficiently familiar to the profession, and to be found collected by most of the text writers on evidence. Their proper application will so much depend on the peculiar circumstances of each case, that but little instruction would be derived from any attempt to embody them in an opinion." Neither shall we undertake, on this occasion, to lay down any absolute rule upon the subject, for, as is said in 1 *Greenl. on Ev.,* § 558, "it should be recollected that the object of the proof is merely to establish a reasonable presumption as to the loss of the instrument, and that this is a preliminary inquiry addressed to the discretion of the judge." Hence, where the case, as presented to us, does not show that the judge has violated any of the established rules of evidence in the conduct and determination of this preliminary inquiry, we cannot say that there was any error on his part in admitting the secondary evidence. In this case we are unable to perceive any such violation of the rules of evidence. The deed was traced to the possession of the master in equity, which is the last heard of it, by whom it is mentioned as being before him at the time he made his report on the petition filed for the sale of the land said to be conveyed by it, the record of that petition and the proceedings under it having been received in evidence without objection from appellants; and then there was evidence of an unsuccessful search in the office of the master, who was dead at the time of the trial below. We do not see that there was any error on the part of the Circuit judge in holding that the proof of loss was sufficient to let in the secondary evidence, especially when it is remembered that this deed was relied upon not as a link in a chain of title, but merely to give color of title to support the plaintiff's claim by possession, for there was no effort to connect Allston, the grantor, in the alleged lost deed, with the original grant. The preliminary evidence offered here was certainly

2 P

much stronger than that which was held to be sufficient in *Edwards* v. *Edwards*, 11 *Rich*. 537.

The second objection is that there was no legal evidence of the genuineness of the alleged lost deed. This objection rests, as we understand it, upon the proposition that in order to prove a deed it is necessary to introduce one of the subscribing witnesses, or, if they be dead, to prove their handwriting, and that this applies as well to a lost deed as to one produced in court. As a general proposition this is undoubtedly true, but in 1 *Greenl. on Ev.*, § 572, among the exceptions to this rule is the following: "If the instrument is lost and the name of the subscribing witness is unknown," citing *Keeling* v. *Ball, Peake on Ev., Appendix, p.* 78, which, on examination, will be found fully to sustain the text. To same effect see *Jackson* v. *Vail,* 7 *Wend.* 125, and our own case of *Barton* v. *Keith,* 2 *Hill* 537. When, therefore, it is made to appear, as in this case, that the subscribing witnesses to a lost deed are unknown, other evidence may be resorted to for the purpose of establishing the existence of the lost instrument as a deed.

The next question raised by the appeal is as to the correctness of the charge of the Circuit judge as to the character of Shackelford's possession. There can be no doubt but that the cases of *White* ads. *Reid,* 2 *N. & McC.* 534; *McBeth* v. *Donnelly, Dud.* 177, and *Slice* v. *Derrick,* 2 *Rich.* 627, cited by the counsel for appellant, do establish the doctrine that mere fugitive, disconnected trespasses, such as cutting trees, stripping bark, &c., however long continued, will not constitute such a possession as will ripen into a title under the statute of limitations; but that was not the character of the possession which the jury, in this case, were instructed would be sufficient. The charge was: "That the entry by Shackelford & Magee, under the deed from Allston, in 1853, the marking out of their claim under said deed by a survey then made, the putting of a stake at each corner of their claim, the building of the wharf on one corner of the same, and that corner being on the part of the land in dispute in this action, the erection of a shed on said wharf in 1856, and the use of said wharf and shed or house [as described by the witness,] by Shackelford & Magee and their tenants were such acts of possession,

under color of title, as would ripen into a title by possession." In this instruction there was clearly no error. *Turpin* v. *Brannon*, 3 *McC.* 261 ; *Allen* v. *Johnson*, 2 *McM.* 495.

It is argued, however, that after the sale by the master, Shackelford's possession was in a different right and cannot be connected with that of Shackelford & Magee prior to the sale. But Shackelford took no deed from the master, and so far as his legal title was concerned it was the same after as before the sale, and, therefore, there was no change in the character of his possession, which would have enured to the benefit of his co-tenant as well as of himself, though such co-tenant would be estopped from claiming any such benefit by the equitable right of Shackelford arising from his having bid off the land and paid the purchase money, and the whole benefit would, in fact, enure to Shackelford.

Appellants next contend that the sale by the assignee in bankruptcy was a nullity, inasmuch as Morgan was then in possession, claiming adversely to the bankrupt, and that when such is the case the bankrupt act confers upon the assignee no power to sell without an order of the Bankrupt Court. According to the view which we take of this case, it will not be necessary to consider what is the proper construction of the bankrupt act in this respect. But we may remark, in passing, that while we can very well understand why a sale by an assignee in bankruptcy of property in the possession of, and claimed by, another should not have any effect in concluding the rights of such claimant unless he is brought before the court and afforded an opportunity to litigate his rights, we do not see any reason why the assignee may not sell the interest of the bankrupt, whatever it may be, leaving the purchaser to litigate with the adverse claimant. As we have said, however, we do not propose to discuss this question, not regarding it as necessary to the decision of this case, because there is no evidence that there was any adverse claimant of the land in question, known to the assignee, at the time the sale was made. On the contrary the evidence is that Morgan, who was then in possession, not only gave no notice to the assignee of any adverse claim, but stood by making no objection to the sale, and actually authorized the assignee to bid for him very nearly the amount for which it was sold to the plaintiffs. We do not think, there-

fore, that either Morgan or those who claim under him are in a position to make the question as to the validity of the sale raised in the grounds of appeal.

The next question is whether the defendants have made out their claim by possession. The possession of Arthur Morgan, under whom the defendants claim, had not ripened into right at the time of his death, inasmuch as an action had been brought against him by the plaintiffs within the ten years, which was pending at the time of his death, when it abated. After his death the plaintiffs, having previously acquired title by possession, as we must assume after the verdict of the jury, took possession, as they had a right to do; for the possession of Arthur Morgan could not, as it would at common law, by descent, be cast on his heirs, so as to bar the plaintiff's right of entry and put them to the necessity of bringing an action. *Code*, § 110. When, therefore, the defendants, by their agent, McQuaid, subsequently took possession and ousted the plaintiffs, that was a new trespass, for which they became liable to suit, and their possession must be regarded as originating in such trespass, and not as a continuation of the possession of Arthur Morgan cast upon them by descent, because such possession had not only been interrupted but put an end to by the possession rightfully taken by the plaintiffs, after the death of Arthur Morgan, by an entry on the land, from which they were subsequently ousted by the illegal act of the agent of the defendants. It is clear, therefore, that the defendants have failed to make out their title by possession.

The judgment of the Circuit Court is affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.