## RHETT v. JENKINS.

1. H, a slave was in possession of a lot from 1840 to 1870, when he died, devising this property by metes and bounds to his widow and son, who remained in possession of the portions devised. Under a judgment obtained against H in 1868, and another against his executor after his death, this lot was sold by the sheriff and purchased by the plaintiffs, who brought this action against the said devisees for its recovery. *Held*, that the judge erred in refusing to charge the jury that, "If they believe from the evidence that the defendants are in possession under H, either as devisees or heirs at law, then they must find for the plaintiffs, unless the defendants have shown an independent title in themselves by connecting themselves with a grant, or proving that which presumes a grant."

2. Proof of the judgment, execution, and sheriff's deed is conclusive evidence of title in the purchaser as against the judgment debtor until the defendant shows a better title.

3. And this rule also applies to parties claiming as devisees under the judgment debtor, upon the principle that in actions for the recovery of real property it is not necessary to prove title beyond a common source—particularly so, where the sale is under a judgment having lien before the devise took effect.

4. Having entered under the will of H the defendants could not afterwards disclaim title by devise and assert an independent title in themselves by adverse possession against the creditors of H.

Before HUDSON, J., Richland, October, 1885.

This was an action by J. T. Rhett and W. A. Clark against Bella Jenkins *et al.*, and is a sequel to *Lyons* v. *Holmes*, 19 *S. C.*, 312. The opinion fully states the case. After passing upon the requests to charge stated in the exceptions considered and others, the judge thus charged the jury as reported by himself:

I instructed them that the plaintiffs must recover upon the strength of their title, and not upon the weakness of the title of their adversaries. To make out a *prima facie* title in themselves,

the plaintiffs must, first, connect their title with a grant from the State by successive deeds of conveyance ; or, second, if no grant can be produced, they must show that from which a grant will be presumed, viz., that at some time in the past the citizens of this State held actual possession of this land adversely in an open and notorious manner for the period of twenty years or more consecutively, and connect themselves with a title thus matured ; or, third, they must trace their title to a source common to the defendants and thus relieve themselves of the necessity of tracing title beyond a common source. The plaintiffs gave in evidence no grant from the State, and hence failed to establish the first and most satisfactory kind of title.

To raise the presumption of a grant, it was in evidence that one Richard Holmes, a slave, was in possession from about A. D. 1840 until he was emancipated in 1865, and thence onward until his death in 1870, leaving his widow Bella—since intermarried with Jenkins— and his son William surviving him ; and to them he conveyed this lot of land by will : one part to his widow, Bella, and the other to his trustee and executor, James D. Tradewell, in trust for William. I instructed the jury that the possession of Richard Holmes for twenty-five years, whilst he was a slave, gave him no title; since, under the law of the land, he could acquire no title to land. His continued possession for five years as a freeman gave him no title. The plaintiffs by purchase at sheriff's sale, under judgment and execution against Richard Holmes, acquired no more than his title, viz., a naked possession of five years, which gave no estate in law.

But the plaintiffs contend that the defendants claim to hold and can only hold under Richard Holmes, and therefore cannot dispute his title. But I told the jury that the defendants claim by possession, and that if they saw fit to repudiate the will of Richard, they could do so, and rest upon this naked possession ; most especially could they set up the defence that Richard had no title or estate which could be cast upon them by descent or which he could convey by will. It was competent for the defendants to show that neither the plaintiffs nor themselves did or could acquire title from Richard.

I charged the jury that if they found the fact to be that

Richard Holmes had no title to this land except the five years possession, from 1865 to 1870, then the plaintiffs acquired nothing by the sheriff's deed, and had no right to recover against the defendants. A naked trespass can neither be cast by descent nor derived by will, nor acquired by levy and sale under judgment against the trespassers. *Ex nihilo nihil fit.* As this was really the point upon which the case hinged, and my rulings upon the points raised touching the two judgments can scarcely be misunderstood, I have not deemed it necessary to refer to them. The finding of every fact in the case was left to the jury.

I have given the substance of my charge without attempting to repeat the language.

*Messrs. John T. Rhett* and *W. A. Clark*, for appellants.

*Messrs. Allen J. Green* and *Mark Reynolds*, contra.

August 3, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action for the recovery of a lot in the city of Columbia, described in the complaint. As well as can be collected from the brief the following outline of facts appeared : That Richard Holmes, a man of color, died in March, 1870, in possession of the said lot, where he had lived for many years. He left of force his last will and testament, by which he devised one moiety of said premises to his wife, Bella, and the other moiety in trust for his son William and his children. After his death, Bella and William remained in possession of their respective portions under the will. William died in 1878, and his wife, Amanda, and her children continued to occupy their moiety. In 1868 James D. Tradewell recovered a judgment against Richard Holmes. In 1878 one Thoroughgood Thornton recovered a judgment against James D. Tradewell, as executor of the will of Richard Holmes, and under executions issued upon these judgments the premises in question were sold by the sheriff in 1885, and bid off by the plaintiffs, who received sheriff's titles and brought this action to recover the lot. The defendants answered denying that Richard Holmes was ever

seized and possessed of the premises, as he was a slave until emancipation in 1865; also denying that the will was of any force and effect as far as the devise to them of the premises was concerned, or that they possessed themselves of the premises under the aforesaid will of Holmes.  And in addition, Bella Holmes interposed the statute of limitations.  The plaintiffs did not undertake to prove title in Richard Holmes, but showed his continuous adverse possession of the premises for upwards of forty years, of which time the last five years prior to his death he was a freeman.

The cause came on for trial before Judge Hudson and a jury. Under the charge the jury found for the defendants.  There were requests to charge on both sides, some of which were charged as presented, some in modified form, and some refused, as fully appears in the exceptions printed in the brief; but it will not be necessary to consider more than the 1st, 5th, 7th, and 8th, which are as follows:

1. "Because his honor, the presiding judge, erred in charging the jury: 'If the jury believe from the evidence that Richard Holmes is the common source, and that the said Richard Holmes was a slave, and that he died on March 11, 1870, plaintiffs cannot recover unless they (the plaintiffs) have shown that the said Holmes acquired title since 1865.'

5. "Because his honor, the presiding judge, erred in refusing to charge the jury, as requested by the plaintiffs, 'that if the jury believe from the evidence that the defendants are in possession under Richard Holmes, either as devisees or heirs at law, then the jury must find for the plaintiffs, unless the defendants have shown an independent title in themselves by connecting themselves with a grant or proving that which presumes a grant.'

7. "That 'if the jury find the fact to be that Richard Holmes had no title to this land except the five years' possession from 1865 to 1870, then the plaintiffs acquired nothing by the sheriff's deed, and had no right to recover against the defendants.'

8. "That 'a naked trespass can neither be cast by descent, nor devised by will, nor acquired by levy and sale under judgment against the trespassers.'"

It will be seen that the leading idea of the charge was, that

the plaintiffs could not recover unless they proved that Richard Holmes, the defendant in execution, had good legal title. This may be necessary in actions brought by purchasers at sheriff's sale against perfect strangers to the judgment debtor, and who do not claim in any way through or under him. But the rule is certainly different where the action is brought against the judgment debtor himself. In such case it is well settled that "proof of the judgment, execution, and sheriff's deed shall be received as conclusive evidence of title until the defendant shows a better." The question here is what is the rule when the action is brought against the devisees of the judgment debtor in possession in accordance with and under his will. The subject as applied to this case is not entirely free from obscurity, but it strikes us that the view of the judge overlooked the consequences of both parties claiming from the same source, and also the force and effect of a sale under judgment as to the parties to that judgment and their privies.

There is no doubt as to the general rule that in an action for land the plaintiff must recover upon the strength of his own title and not the weakness of his adversary's. But there are exceptions, cases in which the plaintiff is not required to trace his title back to a grant. One class of these is where both parties claim from the same source of title; in which, as we understand it, the fact that the plaintiff has traced his title back to a source from which the defendant also claims stands in the place of further proof of title, at least *prima facie*. We do not know that the rule is anywhere better stated than by Judge Withers in the case of *Pyles* v. *Reese*, 4 *Rich.*, 558: "But the obligation is not without exception. Where the parties litigant derive title from the same source, no end of justice is to be attained by tracing beyond. Hence as between lessor and lessee the rule is universal; the latter having gained possession by his acknowledgment is estopped from his denial of the title under which he entered. How stands the case when one enters as a purchaser under the title of another, and a contest subsequently arises between the vendor and vendee? * * * Under the authority of adjudged cases we are of opinion a plaintiff is never compelled to go further back than the source whence the parties before the

court derive title, if the source is the same.   *   *   *   That 'moral policy of the law,' of which Chief Justice Marshall spoke, is well vindicated in such a case by holding that *prima facie* he who enters upon land as a purchaser, thereby admits the title under which he enters to be good.   I would refer to the cases of *Blight* v. *Rochester*, 7 *Wheat.*, 535; *Thomas & Ashby* v. *Jeter and Abney*, 1 *Hill*, 380; and *Hill* v. *Robertson*, 1 *Strob.*, 1.   The opinion now pronounced is but the reiteration of principles held and affirmed in these cases," &c.   And we might add several other cases in our own reports.   *Martin* v. *Ranlett*, 5 *Rich.*, 541; *Geiger* v. *Kaigler*, 15 *S. C.*, 269, &c.

According to this clear judgment, if we consider the defendants as purchasers for value from Richard Holmes, they could not put the plaintiffs to proof of the title of the said Richard; and, surely, they have no higher rights, as mere volunteers, devisees, who have no estate until the debts of the ancestor are paid, and as privies are bound by his sale either made by himself or through the sheriff.   We do not understand that this conclusion rests upon the technical doctrine of estoppel, for the defendants are allowed, if they can, to prove an independent title in themselves; but it is simply the logical result of the defendants' claiming under the same title with that of the plaintiffs, considered in the light of the principle that one is held to admit the title under which he enters.   If in such case the plaintiffs were still required to prove title in the common source, we are unable to see why the rule was ever adopted.   It would certainly be without force or purpose.   As it strikes us, the very object of the rule was to dispense with proof of title in the common·source, or further proof, substituting therefor the admission of the defendant involved in his entering under that title.   As was said by the chief justice in the late case of *Smythe* v. *Tolbert*, 22 *S. C.*, 137: "If the parties do not claim through a common source, then the plaintiff must recover upon the strength of his own title, &c.   If they do, then plaintiff may stop in the first instance at the title of the common grantor," &c.

Besides it happens that in this case there is another principle, growing out of the force and effect of a sale under execution, which fortifies this view.   These plaintiffs purchased the lot in

question under a judgment against Richard Holmes obtained in his life-time, and received therefor a conveyance of the sheriff. In *Thomas & Ashby* v. *Jeter & Abney, supra,* Chancellor Harper states the principle thus: "The rule is, that when a purchaser of lands at sheriff sale brings suit against the defendant to recover possession, he need show nothing but the judgment and the sheriff's conveyance. The same rule applies when the suit is against one in possession, claiming under the defendant, whether as tenant or under a conveyance (or devise), otherwise the rule would be nugatory. Here the conveyance was not subsequent to the judgment, but it is established to have been void from fraud. The defendant then stands in the situation of one put into possession by the original defendant, Thomas (Holmes), without any title at all. * * * If the defendants claim by any other title, they might have shown it in their defence," &c. It seems to us that this is conclusive of the case. The sale and conveyance of the sheriff transferred to the plaintiffs as purchasers all the interest of Holmes, of whatsoever nature and kind it might be. There was nothing left in him which could pass by devise or descent, and these defendants holding as devisees under him could not raise their voice to impeach that title which had passed to the plaintiffs. Like Thomas, in the case of *Thomas* v. *Jeter,* they were "without any title at all"—as Chancellor Harper expressed it.

But it is insisted that the defendants had the right to show that Holmes had no title—that being nominally a slave down to emancipation in 1865, he could not by possession or otherwise acquire legal title to the lot, although he had lived upon it, using it as his own for over forty years, and that his possession after he became a freeman, five years before his death, could not alone give title by adverse possession; and therefore being a mere trespasser he had no interest that could be levied and sold under judgment against him, and that it is absurd to say that something could come out of nothing—*ex nihilo nihil fit.* This at first view seems plausible, but we have already endeavored to show that as against the defendants the plaintiffs' case as to title in the common source must be assumed, at least *prima facie;* that is to say, as to Holmes's title it was not incumbent on the plaintiffs to

show it; and that the only way in which the defendants could defeat this *prima facie* case was either to show better title from Holmes or an independent title in themselves, which right was accorded to them, although mere volunteers, precisely as if they had been purchasers for value.

But even if the title of Holmes were a matter open for opposition on the part of the defendants, we cannot agree that it was shown that he was a mere trespasser and that nothing passed under the execution sale to the plaintiffs. Holmes, the defendant in execution, had all the presumptions arising out of an undisturbed possession for more than forty years. If a trespasser, it did not appear upon whom he trespassed. During five years of the time of his possession he was a free man and capable of acquiring property in any of the ways allowed by law ; and of the parties before the court, who had the right to say that during that time he did not acquire title to the lot ? As we have seen, the defendants, having entered under his title, had not such right.

It is, however, finally contended that the defendants had the right to repudiate the devises and hold on their own independent possession—relying upon the maxim *melior est conditio possidentis*—until perfect legal title was shown. Richard Holmes was a freeman when he made his will, which was legal and binding. The mother and son, named as devisees, manifestly accepted it, for they divided and occupied the different portions of the lot precisely as the will directed. It seems to us that having accepted the will and entered into possession under it, they cannot now, in order to evade paying the debts of the testator, disconnect themselves entirely from him, and, while enjoying his patrimony, disclaim that they received and held it under his will. Such a license would certainly unsettle the rights of parties and tend to defeat the object of the rule as to tracing title to a common source. We think it was error in the judge below to refuse to charge as requested : "That if the jury believe from the evidence that defendants are in possession under Richard Holmes, either as devisees or heirs at law, then the jury must find for the plaintiffs, unless the defendants have shown an independent title in themselves by connecting themselves with a grant or proving that which presumes a grant."

The judgment of this court is, that the judgment of the Circuit Court be reversed and the case remanded for a new trial.