WHEELER *v.* FLOYD.

1. The heir is liable for the debts of the ancestor to the extent of lands descended, but such land, when in the exclusive possession of the heir, cannot be sold under judgment against the administrator, to which the heir was not a party. In such case, the land if not alienated, can be reached only by direct action and judgment against the heir, and sale of the land thereunder.
2. An heir cannot claim lands descended by adverse possession against the debts of the ancestor, though he may thus divest the lien of a judgment obtained against the administrator.
3. Where creditors of an intestate gave to the administrator a paper, whereby they transferred, assigned, and set over to the administrator all their rights and interests in and to all the notes and accounts of the intestate; and bound themselves on final settlement of the estate to receipt in full for all that they might be entitled to from the notes and accounts "hereby transferred and assigned"—such paper was an assignment of all their interest in the personal assets of intestate, and not a release of the administrator. And after crediting to the claims of these creditors the amount collectible from the personal estate, they were entitled to look for the balance to the lands of intestate in the possession of his heirs.
4. This case distinguished from *Gilliland and Howell* v. *Caldwell*, 1 S. C., 198.

5. Action brought by specialty creditors of an intestate, within twenty
   years of the maturity of their obligations, to subject to their demands
   the lands of intestate, which for sixteen years had been in the posses-
   sion of his heirs, is not barred, the facts of the case showing no *laches*
   on the part of these creditors.

Before WALLACE, J., York, March, 1885.

The facts of the case and the decretal order of Judge Fraser
are sufficiently stated in the opinion of the court. The decree of
Judge Wallace was as follows:

Hugh Nichols died intestate, leaving real and personal estate,
and Andrew G. Floyd was duly appointed administrator. This
action was commenced to subject lands which were of Nichols in
his life-time, and now in the possession of his heirs as such, to
the payment of intestate's debts. The heirs set up independent
title to the lands. This issue was heard and decided by Judge
Fraser, who held that the land in controversy was the property
of Hugh Nichols at the time of his death. At that hearing, it
was developed that the creditors of Hugh Nichols had executed
some sort of an instrument to his administrator, in relation to the
personal assets, and in his decree, after deciding the question as
to the title to the land, as stated above, Judge Fraser allowed the
defendants to amend their answer, and set up this instrument;
and then referred all undetermined issues to a referee.

The referee has taken much testimony, and made an elaborate
and interesting report. The present issues between the parties
relate to and arise out of the instrument above referred to, and
which is as follows:

"SOUTH CAROLINA.—York County. We, the undersigned
creditors of Hugh Nichols, late of York County, deceased, hold-
ing sealed obligations as evidences of our debts, for value received,
hereby transfer, assign, and set over to Andrew G. Floyd, admin-
istrator of all and singular the goods and chattels, rights and
credits, which were of the estate of the said Hugh Nichols, de-
ceased, all our rights, titles, and interests of, in, and to all and
singular the notes and accounts due and payable to the said Hugh
Nichols, or payable to the said A. G. Floyd, administrator as
aforesaid, which are now in the hands of the said A. G. Floyd.
And we hereby bind ourselves to receipt the said A. G. Floyd,
administrator as aforesaid, on final settlement of said estate before

the judge of probate of York County, in full of all we may be entitled to, arising from and by virtue of said notes and accounts, which we have hereby transferred and assigned. Given under our hands and seals, this the 15th April, 1869. (Signed) Francis Nichols, H. F. Adickes, B. T. Wheeler."

It is insisted by the defendants that the instrument is a release, operating as a discharge of the administrator, so far as the personal assets were concerned, and that from that date the trusteeship of the administrator ended, and the statute of limitations began to run in his favor, and that the claim of plaintiff is now barred, more than six years having elapsed between the date of the instrument and the commencement of this action; and that as the claims are barred as against the administrator, they are also barred as against the defendants as heirs.

Whether that instrument would bind those who signed it, need not be considered, as they do not seek to escape from its terms. It is obvious, from an inspection of the instrument, that it is not in terms a release. It is, upon its face, an assignment for value to the administrator individually, or as administrator, of all the interest in the personal assets of Hugh Nichols' estate. It was not a discharge of the estate, and whatever the amount of the interest may have been, the heirs are entitled to have it ratably applied to the demands of the assignors, in reduction of their liabilities as holders of land descended. The personal assets were wholly insufficient to pay and discharge the debts of the assignors, as will appear from the evidence. The assignment for value of their interest in the notes and accounts, was only payment *pro tanto.* They still held their demands, and afterwards received from the administrator a dividend of eight per cent.—all going to show that it was not the understanding of any of the parties to the transaction that the administrator had renounced his trust.

I am of the opinion, therefore, that the statute of limitations has not commenced to run in favor of the estate, by any renunciation of the trust by the administrator. The notes set up here were all sealed instruments, and were not barred by presumption of payment from lapse of twenty years' time from their date to the commencement of this action.

The finding of the referee as to the amount of personal estate

in the hands of the administrator is confirmed. The amount must be credited ratably upon the demands set up in this action. The plaintiff here, however, is not entitled to receive any portion of that, but has agreed, for value, to receipt for it. I am inclined to think that this assignment was intended for the benefit of the administrator, and that he is entitled to retain the *pro rata* share of the fund in his hands of the creditors who assigned their interests to him.

Judge Fraser having already decided that the land in the possession of the heirs of Hugh Nichols, which they hold by descent, is liable for the debts of the ancestor, I have nothing to do with that question. It is manifest that the personal assets are insufficient to pay the debts of the estate, and the land, therefore, must be sold and the proceeds applied to their payment.

I do not see why the administrator should pay his own costs. The referee does not hold him to blame for not collecting any more of the notes, and was satisfied that due diligence was used by him, and in this he is supported by the testimony. The funds in the hands of the administrator were not paid out, because he held them as his own by assignment. So far as I see, his duties were performed.

It is therefore adjudged, that the land be sold upon such terms as may be set out in an order hereafter made at the foot of this decree, and the proceeds applied to the payment of debts standing against the estate of Hugh Nichols, according to their legal rank and priority, and that the costs of this action be first paid from the proceeds of said sale.

From this decree the defendants, Mrs. Curry and Hugh Nichols, appealed upon the following exceptions:

I. *To the interlocutory order:* Because of error in adjudging that the possessory title of the defendants, Curry and Nichols, who had jointly occupied and used the real estate in question for sixteen years prior to action brought, could not be sustained because one of them (Mrs. Curry) had allowed proceedings to set apart a homestead to be instituted in her name.

II. *To the decree:* 1. Because of error in failing to adjudge that the plaintiff (the only creditor proving a debt) was barred of his action against the heirs for real estate descended, by reason

of the fact that he executed a release to the administrator "of all interest in the personal assets of Hugh Nichols' (the intestate's) estate" more than six years prior to the commencement of this action.

2. Because of error in holding, in effect, that inasmuch as the release to the administrator by the plaintiff and other creditors was not competent to discharge him generally as to his trusteeship of the estate, it was not a bar to the plaintiff and the other creditors who had executed it.

3. Because it was error on the part of the Circuit Judge to set aside the conclusion of the referee (to whom all the issues had been referred) that "this release was such a renunciation of the trusteeship by the administrator as would set the statute to running from its date, against those who were privy to it"—no exception having been taken to such conclusion; and it was error to hold the heirs bound for the same debt, after the bar was complete in favor of the administrator of the estate.

4. Because of error in holding that the administrator could retain the balance of the personal estate in his hands, transferred to him by creditors, and the lands be sold and the whole proceeds applied to the plaintiff's debt.

5. Because the decrees should, in any event, have found the value of the assets descended *at the time of intestate's death,* and directed payment by the heirs of such sum, less the amount in the administrator's hands, as shown by the accounting herein; and a sale of the lands should only have been ordered as an alternative of non-payment.

*Messrs. Hart & Hart,* for appellants.

*Mr. C. E. Spencer,* contra.

March 18, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. One Hugh Nichols, late of York County, the husband of the defendant, Mrs. Emma F. Faulkner (now Curry), and the father of Hugh Nichols, departed this life intestate in 1866. At the time of his death, he was indebted to the plaintiff in the several notes mentioned in the

complaint. The defendant Floyd administered on his estate, and the tract of land sought to be sold descended to his widow and son above named, who have been in possession ever since, a period of sixteen years before the action below was commenced. It is alleged in the complaint, that the personal estate in the hands of the administrator was insignificant and did not amount to the excess of plaintiff's sealed demands over one thousand dollars. Wherefore plaintiff demanded judgment, that the real estate in possession of the heirs at law, defendants, be sold; that creditors be called in; that the administrator be required to account, &c., and in the event that the land may not be sold, that plaintiff have judgment against the heirs at law for the sum of $1,000, and costs, the value of said land, &c.

The defendants answered separately. The administrator plead full administration of the estate, a release from further accounting by the creditors, including the plaintiff, in April, 1869, and the statute of limitations as a bar to any further accounting. The other defendants plead title to the land by their long possession, and denied title in the deceased; also, that the demand of plaintiff was stale, and that they were in no way liable therefor by reason of assets descended; also, as to Hugh Nichols, that he was under age; and finally, that the plaintiff had released the administrator from liability in 1869, notwithstanding he had personal assets sufficient to pay the debts, which, they contended, estopped the plaintiff from subjecting the real estate to his claims, specially pleading the lapse of six years since said release as a bar to this action against them as heirs at law.

The case was heard first by his honor, Judge Fraser, upon the pleadings and evidence taken before him, upon which evidence he held that title to the land was in the intestate at his death, and that the defendants, his heirs at law, could not dispute that title, especially as the widow had claimed a homestead in the land after the death of her husband as against his debts; and he adjudged the land liable for the debts of the deceased. But before ordering sale, he thought the administrator should account for the personal assets, with leave to the defendants to set up the release mentioned, and the statute of limitations, &c.; and to this end he ordered the case to a special referee, who reported the amount

due the plaintiff, upon such of his notes as were not presumed paid by the lapse of twenty years, also the amount of personal assets in the hands of the administrator, &c.

This report was heard by his honor, Judge Wallace, who, construing the paper mentioned and set up as a release to be more in the nature of an assignment by the creditors of their *pro rata* share in said assets to the administrator, and not a discharge of the estate or a satisfaction of their claims, adjudged that it could not avail the defendants, except so far as the claims of the creditors should be credited with their respective *pro rata* shares in said assets, the administrator, however, being entitled to hold said *pro rata* shares to himself under said assignment; also finding that the personal assets, when thus applied as a credit upon the claims of creditors, were manifestly insufficient to pay said claims. And inasmuch as Judge Fraser had decreed title to the land to have been in the intestate at his death, and liable for the debts of the ancestor in the hands of the heirs, he further adjudged and ordered the same to be sold, the proceeds to be applied to the payment of the claims established, exonerating the administrator from any liability, the funds in his hands being his own under the assignment.

The main question involved in the appeal of defendants is the doctrine of liability of heirs for the debt of the ancestor on account of lands descended or devised. Under the English statute of George II., that doctrine, as established in this State, succinctly stated, seems to be as follows: While it is true that the heir is generally liable for the debts of the ancestor, sealed or unsealed, to the extent of lands descended or devised, yet the land so descended or devised cannot be sold under a judgment obtained against the administrator or executor, obtained in an action to which the heir is not a party, if at the time of such judgment the heir is in the exclusive possession of the land asserting the right of possession and enjoying its rents and profits. In such case, the heir can only be made liable by direct action against him or them, in which, if judgment is obtained, the land can be levied upon, provided it has not been transferred before action brought. See the case of *Bird* v. *Houze, Speer Eq.*, 252, and the cases there cited; and *Jones* v. *Wightman*, 2 *Hill*, 579. It

is further the law, that the heir cannot acquire title to the land descended as against the debts of the ancestor, by a claim of adverse possession, as against the title descended; though it may be, that where the heir claims in his own right, and his possession may be considered adverse, that such possession, if thus continued for ten years, would divest the lien of a judgment obtained against the ancestor in his life-time. *Drayton* v. *Marshall, Rice Ch.*, 374; *McRae* v. *Smith*, 2 *Bay*, 339; *Cholett* v. *Hart*, 2 *Bay*, 156.

Now, in the case before the court, the title to the land in question was adjudged below to have descended to the defendants, widow and son of the deceased, as heirs at law, and we think the evidence sustains that finding. We must regard that question, therefore, as settled. The important question left then for our consideration is, has the plaintiff established a claim against these heirs on account of a debt of the ancestor? Several of the notes set up by the plaintiff, being past due for over twenty years, were properly excluded under the presumption of payment arising from the lapse of time. Several of the other notes, however, have been established, as the presumption could not be applied to them, twenty years not having intervened since they became due.

But the defendants have relied upon the paper from the creditors to the administrator, given in 1869, which they contend was a release of the estate, and, therefore, a release to them also. And that six years having intervened since its execution, that the statute of limitations is a bar. This, we think, would be a good and perfect defence, if the paper in question was a release. But his honor, Judge Wallace, has construed it to be no release. He has held it, in effect, to be an assignment of the creditors' *pro rata* share in the personal assets to the administrator himself, and it operated as a credit upon the claims of the assigning creditors to the extent of their said *pro rata* share, leaving the balance unpaid, and still a debt against the ancestor. Was this a proper construction? The paper will be found in the "Case," and we think there is no doubt that the construction of his honor is correct. In fact, the terms of the instrument are so pointed and plain, that we cannot see how any other interpretation than that given by his honor could be suggested. We understand the de-

cree of Judge Wallace to be, that the debt of the plaintiff, as established, must first be credited with the plaintiff's *pro rata* share of the assets in the hands of the administrator, and that the heirs are liable only for the balance of the debt, and that the duty of the administrator had been performed, and, therefore, no costs should be taxed against him. We understand, further, that the exceptions involving the administrator have been abandoned.

This case is different from the case of *Gilliland and Howell* v. *Caldwell*, 1 *S. C.*, 198. In that case, the claim of the creditor was upon a promissory note, and although it had been established against the administrator, or at least against the estate in a creditor's bill in 1847, and received its *pro rata* of the personal assets, yet the heirs who were in possession of the real estate, and remained in possession until 1863, when the creditor exhibited his bill against them to subject the real estate to the payment of so much of the debt as remained unpaid, was allowed to plead the statute, and it was held that the bill was barred by the statute. The heirs not being bound by the establishment of the debt previously, and the note upon which the debt was founded being a promissory note, the heirs, when they were sued, had the right to meet it by the statute. Such would be the law here if the notes of the plaintiff were promissory notes, but they are sealed notes, and twenty years have not elapsed, giving rise to the presumption of payment.

The case of *Mobley* v. *Cureton* (2 *S. C.*, 140) is more like this. There, a creditor attempted to subject lands in the possession of the heirs to his debt represented by sealed note of the ancestor. The administrator had been sued on this note and judgment obtained in 1860. Thirteen years afterwards, the heirs being in possession all this time, the proceeding to subject this land to the payment of his debt was instituted; *held*, that the plaintiff was barred by his *laches* of his remedy in equity, and the bill was dismissed without prejudice to plaintiff's right to pursue the heirs at law. The decision, however, was based principally upon the ground that the creditor, by his *laches*, had not exhausted the personal assets, which the court held was the primary fund for the payment of the debts, and which, by the delay of the creditor, has been lost in the hands of the administrator. Here, the credi-

tor has, by the decree of Judge Wallace, been ordered to accept
as a credit on his notes his *pro rata* of the assets in the adminis-
trator's hands.    It was further held in that case, that the statute
of limitations being inapplicable to an action at law against the
heirs of an intestate to recover a specialty debt of the intestate,
it cannot be pleaded to a bill in equity against the heirs to sub-
ject real estate descended to the payment of a debt due on a sealed
note.    If, however, the plaintiff in such a bill has been guilty of
*laches*, the court may refuse him its aid, and bar the equitable
remedy at a period short of that which would raise the presump-
tion of payment.

.   In the case of *Cleveland* v. *Mills* (9 *S. C.*, 430), the court held
that the statute of limitations applies to an action against heirs
to subject real estate in their possession to the payment of the
debts of the ancestor.    That was a case, however, of a suit on a
guaranty, and four years not having elapsed when the ancestor
died, and the creditor having commenced his action within the
four years, deducting the nine months allowed the executor, it
was held not barred.

The complaint below seems to have been regarded by his honor,
Judge Fraser, as framed in a double aspect, to wit, both at law
and in equity.    Admitting this to be so, still it cannot avail the
defendants, heirs at law.    In the law aspect, we find the notes
sued on sealed notes, and within the twenty years necessary to
presume payment; and, on the equity side, the Circuit Judge has
not found such *laches* on the part of the creditor as would bar his
equity under the cases *supra*.

It is the judgment of this court, that the judgment of the Cir-
cuit Court be affirmed.