BROCK v. KIRKPATRICK.

1. ISSUES OUT OF CHANCERY.—DOES APPEAL lie from finding of jury on questions submitted by Circuit Judge as to title to land by adverse possession set up in answer to complaint to subject lands devised to payment of testator's debts, preceding Judge having placed cause on calendar one for trial of this issue?

2. REAL PROPERTY—ADVERSE POSSESSION—LIMITATION OF ACTIONS—CREDITOR.—Statute of limitations does not begin to run in favor of devisee in possession of land under will as against right of creditor to subject lands devised to payment of testator's debts until the executor is exhausted and return of *nulla bona* made.

Before TOWNSEND, J., Abbeville, October term, 1901. Affirmed.

Action by L. A. and T. H. Brock against Hannah Kirkpatrick and Annie Taylor. From findings of jury on issue of title submitted, defendants appeal.

*Messrs. M. P. DeBruhl* and *Frank B. Gary,* for appellants, cite: *Devisees may set up adverse possession:* 62 S. C., 306; 60 S. C., 322; 24 S. C., 90. *And the ten years begins to run when they went into exclusive possession:* 24 S. C., 90; 62 S. C., 311; 2 Hill Ch., 257; 10 Rich. Eq., 438; 35 L. R. A., 835; 4 L. R. A., 647; 113 U. S., 149; 10 L. R. A., 387; McM. Eq., 134; 21 S. C., 126. *Land could not be sold under execution issued on judgment against executor:* 2 Hill, 579; 24 S. C., 719. *If devisees hold as trustees, it is an implied trust and liable to bar of statute:* 1 Ency. Law & Proc., 1065; 20 Ency., 1, 813, and notes. *Answer sets up title, triable by jury:* 25 S. C., 77. *And no issues should have been framed:* 61 S. C., 5; 52 S. C., 236; 54 S. C., 353, 155; 42 S. C., 92; 40 S. C., 517.

*Mr. Wm. N. Graydon,* contra, cites: *Appeal does not lie from verdict:* 59 S. C., 557; 63 S. C., 124. *Admission of judgment roll and nulla bona return if error, was harmless:* 30 S. C., 172; 34 S. C., 16. *Statute begins to run in favor of defendants only after executor is exhausted:* Rev. Stat., 1893, sec. 2080; 27 S. C., 332; 60 S. C., 322; 21 S. C., 462; 24 S. C., 413; 1 Ency. Law & Proc., 1055, and notes.

This case was first argued before Associate Justices Pope and Jones and Circuit Judge Ernest Gary, acting Associate Justice, at April term, 1902. At this time a motion was made by respondents to dismiss the appeal because no appeal lies from the verdict of a jury, and that defendants could not appeal until final judgment in the case. Motion was refused by a majority of the Court.

On July 4, 1902, an opinion was handed down by Judge Ernest Gary, reversing the action below, which was con-

curred in by Mr. Justice Pope, and Mr. Justice Jones filed a dissenting opinion.

On petition for rehearing on ground that it required concurrence of three Justices to reverse a judgment, remittitur was held up, and on 24th February, 1903, case was ordered to be reargued at April term, 1903.

May 31, 1904.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    The judgment of the Circuit Court should be affirmed.

1. The appeal is premature.    The action is purely equitable, to subject lands devised to the debts of the testatrix against devisees in possession under the will, and it has been referred to the master to hear and determine all equitable issues.    There has been no order, judgment or decree in the case from which an appeal can be taken under sec. 11 of the Code of Procedure.    True, there is a verdict of a jury on certain matters submitted to them, but no order or judgment has been predicated thereon, and it has been frequently held that an appeal will not lie from a verdict.    *All* v. *Hiers,* 59 S. C., 558, 38 S. E., 157; *Hutmacher* v. *Railway,* 63 S. C., 124, 40 S. E., 1029.

2. The answer does not raise any legal issue of title by adverse possession which is triable by jury as matter of right. Confusion has arisen by a failure to observe the real nature of the action and the defense.    The action is equitable, and is necessarily predicated on the fact that both title and possession are in the devisees under the will.    It is based upon the creditor's equity to subject the devised lands to the debts of the devisor.    The answer properly construed sets up no *title* inconsistent with plaintiffs' equity.    In order to make this clear we quote the answer as follows: "That by her last will and testament mentioned in paragraph IV. of the complaint, the said Jane Taylor devised to the defendant, Hannah Kirkpatrick, two hundred acres of land and to the defendant, Annie

Taylor, two hundred and sixty acres of land, the two parcels being that tract of land described in the complaint, and these defendants are now the sole owners and possessors thereof in fee simple. That immediately after the death of the said Jane Taylor, to wit: on the 16th day of December, 1888, each of said defendants *under and by virtue of said devise* entered into the sole and exclusive possession of her respective tract of said land, and each of them has remained in the exclusive and adverse use and occupation of her tract of said land, exercising acts of sole ownership and receiving the rents, issues and profits of the same continuously for a period of more than ten years next preceding the commencement of this action. These defendants interpose their continuous adverse possession of said lands as a bar to this action."

By the first part of the answer, defendants claim to be the owners in fee simple under the will of Jane Taylor, and by the second part of the answer defendants assert that they *entered* into sole and exclusive possession of said land under *and by virtue of said devise,* and have *remained* in exclusive and adverse use, &c., for ten years preceding the action, which possession is interposed as a bar to this action. Thus it will be seen that the answer sets up no title paramount to plaintiff's equity.

The rule is thus stated in *Sale* v. *Meggett,* 25 S. C., 77: "Where a title is set up, which if proved to exist as alleged would be superior to the plaintiff's title, then, in such case, the existence of such title is a matter for the jury, under the instruction of the Judge as to the law involved. But where, even admitting the title claimed by the defendant as alleged, yet if it is inferior to that of plaintiff and as a matter of law would not defeat his claim, if sustained by the verdict of the jury, then there is no necessity for the Judge trying an equity cause to submit the title to a jury, for the reason that, in fact, the title is not really involved, as the defendant can claim nothing under it; and, therefore, it would be wholly useless to encumber the proceeding with a separate trial in

reference thereto. The Judge himself may adjudicate the rights of the parties." In *Bank* v. *Peterkin,* 52 S. C., 236, 29 S. E., 546, which was an equitable action to foreclose a real estate mortgage, a defendant was allowed to have an issue of title submitted to a jury because the answer raised an issue of *paramount* title in himself, which would defeat plaintiff's recovery as to him. In order to raise an issue of title in defendants triable by jury, as matter of right, so as to defeat plaintiffs' action, it would be necessary to set up title paramount to the title of testatrix.

It is true, that plaintiffs' recovery in this case could be defeated by showing exclusive possession of the devised lands for ten years after the right of action accrued in favor of plaintiff. But such 'a defense raises no issue of title triable by jury as matter of right. Such defense is really equitable. It is founded not upon defendants' title or possession, which is undisputed, but upon the delay or laches of plaintiffs in enforcing their equity. In such cases the court of equity might or should hold the remedy barred in analogy to the statute of limitations with reference to actions to recover possession of real estate. *Miller* v. *Mitchell,* Bailey Eq., *437. If this is the correct view of the issue as raised by the pleadings, then manifestly it would be wrong to remand the case to the Circuit Court for a new trial before a jury on the question of title made by the pleadings.

3. On the call of the case, June 27, 1901, on motion of defendants' attorneys, Judge Klugh made an order in these terms: "The defendants having set up in their answer that they are, and have been since December, 1888, in the continued and adverse possession of the land in dispute, and having asked for a trial by jury on this issue; after argument of counsel, pro and con, it is ordered, that the case be transferred to calendar (1) one, for the purpose of trying said issue by jury." The cause was called on calendar 1, at the        term, 1901, before Judge Townsend, and a question arose as to the proper way to submit the question to the jury. After argument, Judge Townsend drew up the fol-

lowing issues for the jury: "1. Has the defendant, Annie Taylor, acquired title to the 260 acre tract by adverse possession? (2) Has the defendant, Hannah Kirkpatrick, acquired title to the 200 acre tract by adverse possession?"

The jury found both questions in the negative, and it is now sought to set aside these findings of fact mainly because of alleged misdirection to the jury. The charge and refusals to charge are sufficiently set out in the opinion by acting Associate Justice Ernest Gary, and need not be further particularized. The main point is substantially involved in the third exception, which alleges error "in charging the jury that the ten years necessary to give defendants title by adverse possession must commence to run from the time the executor was exhausted, and 'that the jury must commence to count from that time and not from the time that the defendants went into possession, claiming as their own and exercising acts of sole ownership."

The evidence showed that judgment was obtained against the executor March 21st, 1895, *nulla bona* return April 13, 1895. The action was commenced April 20, 1899. The case states that "defendants offered evidence tending to show their claim of title as alleged in their answer, and that they had been in the exclusive and adverse possession of said lands, claiming them as the sole owners, since December 16, 1888." As has already been shown, the claim of title as alleged in the answer was under the will of Jane Taylor, under which defendants entered and remained in exclusive possession of the land from the death of the testatrix, which was December 16, 1888. The charge must, therefore, be construed with reference to the case as made by the pleadings and evidence, and not on the theory that defendants had set up an independent and paramount title in themselves.

The authorities are clear to the point that an heir or devisee having entered as such cannot acquire title to the lands descended or devised as against the debts of the ancestor or devisor by a claim of adverse possession as against the title descended or devised. *Wheeler* v. *Floyd,* 24 S. C., 420;

*Rhett* v. *Jenkins,* 25 S. C., 453; *Roberts* v. *Smith,* 21 S. C., 455; 1 Cyc., 1055. It is true, that in *Cleveland* v. *Mills,* 9 S. C., 436, an action to subject lands devised to payment of testator's debts, the Court said, defendants, as one of their proper defenses, could "have relied on their own possession for the statutory period, as in *Miller* v. *Mitchell,* Bail. Eq., *437." But in order to ascertain what the Court meant by that language, we must resort to *Miller* v. *Mitchell,* and on referring to that case, we find that Chancellor Harper said: "I wish, however, to express the opinion distinctly, that petitioner is barred by his delay after the recovery of his judgment in 1820 and the defendant protected by lapse of time in analogy to the statute of limitations. The defendants have been in possession of their legacies since 1812, claiming adversely—that is, claiming them as their absolute unqualified property. Whatever equity or cause of action the petitioner has against them now arose, at all events, on the return of *nulla bona* to his execution issued on the judgment of 1820. At that time the executor, Lazarus, had become insolvent, although the precise date of his assignment for the benefit of his creditors does not appear. The master's report states that judgments obtained against him as early as 1818 remained unsatisfied; and I conclude he was insolvent when the judgment of 1820 was obtained. But the return of *nulla bona* must have been made within the year after the judgment rendered; and the present petition was not filed until March 10, 1826; and by any computation the petitioner's equity must have arisen more than four years before his present suit was commenced." Manifestly the adverse possession relied upon in that case to bar the creditor's equity was a possession held for the statutory period after return of *nulla bona* against executor.

A devisee in possession of land under a will holds it subject to the equity of the creditors of the devisor to have it sold for the payment of his debts. By the decision of this Court, in the former appeal in this case, the creditor's equity to subject lands devised to the payment of the testator's debts

does not arise until the executor has been exhausted and return of *nulla bona.* *Brock* v. *Kirkpatrick,* 60 S. C., 322, 38 S. E., 779. Until then plaintiff had no right of action against defendants, and defendants' possession and use of the land was entirely consistent with a devise held subject to the rights of testator's creditors. The devisees' possession of devised land, in order to be adverse and exclusive so as to bar the equity of the testator's creditors, must be hostile to such equity, and can only have starting point when right of action accrues in favor of the creditor. I think, therefore, that the jury were properly instructed.

Under these views, the appeal should be dismissed, and the cause allowed to proceed under the order of reference to hear and decide all equitable issues raised by the answer.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE WOODS, *concurring.* I concur in the opinion of Associate Justice Jones, that the appeal must be dismissed. Prior to the judgment of this Court on the former appeal in this case (60 S. C., 322, 38 S. E., 779), it seems to me the law in this State as to when the right of action accrued to a creditor to subject lands descended or devised to decedent's debts, was in a state of great uncertainty. The due administration of the law, I venture to think, would have been promoted, if the review of the authorities had led to the conclusion that the suit against the heir or devisee to subject lands could be brought at any time after the lapse of one year from death of decedent, with the right to the heir of devisee to require the administrator or executor to be made a party, to the end that he might be reimbursed from the personal estate, if any there should be. The statute of limitations would then have begun to run in favor of the heir or devisee and the executor or administrator at the same time.

This view of the rights of the parties was suggested by Chancellor Harper, in *Vernon* v. *Valk,* 2 Hill Ch., 259. It would have enabled the creditor to collect his debt with

greater facility and expedition, and the land of the devisee or heir would have been released within a fixed and reasonable time from the peril of suit to subject it to decedent's debts. Requiring the creditor to first exhaust the personal estate by suit against the personal representative before he can sue to have the land sold, subjects him to delay and the risk of the loss of this source of payment, arising from the possibility of alienation before suit by the devisee or heir; and the postponement of his right of action against the devisee or heir often leaves the title in uncertainty for many years. The Court was constrained, however, on the authority of adjudicated cases, to hold that the creditor's right of action to subject the lands does not accrue until there has been a return of *nulla bona* against the personal representative. That decision seems conclusive of the main question involved in this appeal.

The defendants allege they took and held possession of the land under the devise, and their taking and holding was in view of the law subjecting it to the right of creditors to have it sold for payment of testator's debts. The creditors' claim not having matured into a right of action until a return of *nulla bona* had been entered against the executor, there could be no possession adverse to the claim until that time. The rule that a life tenant cannot hold adversely to the remainderman is founded on the same principle, which is that there can be no adverse possession to defeat a right where the possession was begun in subordination to the right until a right of action has accrued.

It is, of course, manifest that the decision of this issue does not in any way affect the defense of laches by the creditor, which is to be passed on by the Circuit Judge.

MR. CHIEF JUSTICE POPE, *concurring*. I was for some time inclined to consider the Circuit Judge in error in his charge to the jury in this case, but a calm review of the decision of the first appeal in this very cause has caused me to change my views. This is the holding of this Court

in the case of *L. A. and T. H. Brock, as plaintiffs,* against *Hannah Kirkpatrick and Annie Taylor, as defendants,* in 60 S. C., at page 352, 38 S. E., 779 : "But in this case the statute (statute of limitations) did not begin to run when the plaintiffs held a past due obligation of the testatrix and the defendants held lands devised (to them) and liable therefor, as was held by Judge Gage. The statute began to run only after the remedy against the executor had been exhausted. The judgment was recovered in March, 1895, execution issued and *nulla bona* returned thereon. This action was commenced in April, 1899, only four years after the remedy against the executor had been exhausted. It is clear, therefore, that the statute of limitations could not be properly set up as a defense by these defendants, and that the plaintiffs' first ground of demurrer directed against that defense should have been sustained; and that it was error in the Circuit Judge to overrule it." The judgment of this Court was as follows : "It is the judgment of this Court that the decree of the Circuit Judge herein be reversed, in so far as it overruled the plaintiffs' first ground of demurrer; and that in all other respects the judgment of the Circuit Court be affirmed, except as to the right of homestead, which was left open by the Circuit Judge, and that the case be remanded to the Circuit Court for the purpose of hearing and determining the claim of homestead, with leave to the defendants to apply to that Court for such amendments to their answer as may be deemed necessary to bring before the Court all such facts as may be pertinent to the claim of homestead."

The plaintiffs and defendants being parties to the aforesaid decision of this Court, are bound by it, and neither of said parties had the right to disregard it; clearly they had no right to bring in question again any question as to the statute of limitations as a defense. The Circuit Judge who heard this cause had no right to open up this defense, because the demurrer of plaintiffs to so much of defendants' answer as set up the defense of the statute of limitations had

been settled by the decision of this Court. The action was only remanded to the Circuit Court to pass upon the claim of defendants to a homestead.

The errors of the Circuit Judge as presented by this appeal now being considered are perfectly harmless.

The appeal from Judge Townsend's charge to the jury should be dismissed.

MR. ERNEST GARY, *Circuit Judge, acting Associate Justice in place of* MR. JUSTICE GARY, *disqualified.* Being unable to concur in the opinion prepared by Mr. Justice Jones and concurred in by separate opinions of the other two Justices who sat at the hearing of this appeal, I shall set out at length my reasons for such dissent.

The opinion of Mr. Justice Jones dismisses the appeal upon two grounds: 1st. That the appeal is premature. 2d. That the answer does not raise any legal issue of title by adverse possession, which is triable by jury as a matter of right.

Upon the first ground it is not my purpose to dwell, for the reason that I do not consider that a proper ground for the consideration of this Court at this time. Upon the call of the case, at the first hearing, a formal motion was made to dismiss the appeal on that ground, and after a full argument *pro and con,* the motion was refused, and the result announced in open Court by the Chief Justice. It seems to me, therefore, that this motion should not be again considered upon a hearing on the merits. That question being *res judicata.*

Now as to the merits: That the answer does not raise any legal issue of title by adverse possession which is triable by jury as a matter of right, and before entering upon a discussion of this phase of the case, I think a statement of the issues tried below should appear.

Action was commenced on the 20th day of April, 1899, and its purpose is to subject the land described in the complaint to the payment of a debt of Jane Taylor, deceased,

16—69

alleged to be due to the plaintiffs. The "Case" shows that Jane Taylor died on the 16th day of December, 1888, leaving of force her last will and testament, by the terms and provisions of which she devised the lands sought to be subjected to the payment of her debts to the defendants herein, who immediately went into possession of said lands, and have remained in the possession thereof ever since. So much of the pleadings as is necessary for a proper understanding of the issues raised by the appeal, we think should be set out.

The second paragraph of the complaint alleges: "That on the 21st day of March, 1895, the plaintiffs recovered a judgment against R. T. Kirkpatrick, as executor of the last will of Jane Taylor, deceased, upon a debt which they held against Mrs. Jane Taylor upon a note executed by her in her lifetime, and upon which they, the plaintiffs, had previously recovered a judgment in the court of probate for Abbeville County against the said R. T. Kirkpatrick, as executor of the last will and testament of Mrs. Jane Taylor, deceased, and said judgment of the probate court was duly docketed and transcripted into the office of the clerk of the Court of Common Pleas for Abbeville County, where it is now on file.

"3. That execution was duly issued against the said R. T. Kirkpatrick, as executor as aforesaid, and the same returned *nulla bona.* * * *

"5. That by the said will, the said Jane Taylor devised to the said Hannah Kirkpatrick and the said Annie Taylor, a tract of land known as the 'home place,' containing 460 acres, more or less, bounded by lands of Jane Johnson and others, 260 acres being devised to Annie Taylor and 200 acres to Hannah Kirkpatrick.

"6. That the said Annie Taylor and Hannah Kirkpatrick have gone into possession of their respective tracts of land, and now claim to be the sole owners in fee simple thereof."

To this complaint the defendants answered, denying certain allegations of the complaint and pleading several special defenses; the only part of the answer, however, that is material to this appeal is as follows: "That immediately after

the death of the said Jane Taylor, to wit: on the 16th day of December, 1888, each of said defendants, under and by virtue of said devise, entered into the sole and exclusive possession of her respective tract of said land, and each of them has remained in the exclusive and adverse use and occupation of her tract of said land, exercising acts of ownership and receiving the rents, issues and profits of the same continuously, for a period of more than ten years next preceding the commencement of this action. These defendants interpose their continuous adverse possession of said lands as a bar to this action."

When the case was called for trial, the plaintiffs' attorney moved for an order of reference, but the defendants' attorneys objected, and moved that the case be transferred to calendar 1 for trial of the issue of title raised by the plea of adverse possession set up in the answer. The presiding Judge (Klugh) refused the order of reference, and signed the following: "The defendants having set up in their answer, herein, that they are and have been since December, 1888, in the continuous and adverse possession of the land in dispute, and having asked for a trial by jury on this issue, after argument of counsel, *pro and con,* it is ordered, that the cause be transferred to calendar (1) one, for the purpose of trying said issue by jury," June 27th, 1901.

The cause was subsequently called on calendar 1 at the October term (1901), before Judge Townsend, and a question arose as to the proper way to submit the question to the jury. After argument, Judge Townsend drew up the following paper: "Issues for the Jury.—Has the defendant, Annie Taylor, acquired title to the 260 acre tract by adverse possession? 2. Has the defendant, Hannah Kirkpatrick, acquired title to the 200 acre tract by adverse possession?"

The issues thus framed were submitted to the jury, after a charge of the presiding Judge upon the questions of law involved, upon written requests of both plaintiffs' and defendants' attorneys. The jury rendered a verdict, finding both questions in the negative. From which the defendants

appealed to this Court, upon the following exceptions mate-
rial to the issue:

"3. Because his Honor, the presiding Judge, erred in
charging the jury that the ten years necessary to give the
defendants title by adverse possession must commence to run
from the time the executor was exhausted, and that the jury
must commence to count from that time, and not from the
time that the defendants went into possession, claiming the
land as their own and exercising acts of sole ownership.

"4. Because his Honor erred in charging plaintiffs' first
request to charge, as follows: 'That if the jury find from the
testimony that the defendants entered into possession of the
land described in the complaint, as devisees under the will of
Jane Taylor, deceased, and have been holding it as such
devisees ever since, then they hold said lands as trustees, by
operation of law, for the creditors of Jane Taylor, and could
not hold by adverse possession so as to bar the rights of the
creditors of Jane Taylor, until the rights against the executor
were exhausted.' It being respectfully submitted that the
devisees did not hold as trustees, and if they did so hold, the
law is that adverse possession will commence to run in favor
of a trustee of a constructive trust from the inception of the
trust, unless there has been a fraudulent concealment of the
cause of action.

"5. Because his Honor, the presiding Judge, erred in
charging the plaintiffs' second request to charge, as follows:
'That if the jury find from the testimony in this case that a
return of *nulla bona* was not made against the executor of
the estate of Jane Taylor until the year 1895, and that suit
was commenced against the defendants in 1899, then the
plea of adverse possession in this case must fall, and the jury
must find for the plaintiffs.' It being respectfully sub-
mitted: (a) That the time necessary to give the defendants
title by adverse possession commenced to run when they
went into exclusive possession of the land, claiming it as
their own as sole owners.   (b) That the said charge was a

charge on the facts, in violation of section 26, of article V., of the Constitution of this State.

"6. Because his Honor erred in charging the jury as follows: 'If you find that the executor was discharged in 1895, and if you find that this action was brought in 1899, and if you find that that was less than ten years, then the claim of adverse possession is not made out.' It being respectfully submitted that this charge postponed the commencement of the running of adverse possession until the discharge of the executor, and made the claim of title by adverse possession dependent upon the discharge of the executor.

"7. Because his Honor, the presiding Judge, erred in charging plaintiffs' third request to charge, as follows: 'That it is the law of this State that the heir or devisee cannot acquire title to land descended or devised as against the debts of the ancestor or devisor, by a claim of adverse possession as against the title descended or devised.'

"8. Because his Honor, the presiding Judge, erred in charging the plaintiffs' fourth request to charge, as follows: 'That in this case no cause of action accrued against the defendants in this case until the remedy against the executor was exhausted, and if the jury find from the testimony that the remedy against the executor was not exhausted until 1895—that is, that a return of *nulla bona* was not made upon the execution until 1895, then the plaintiffs would have had ten years from that time to bring this action; and if the defendants have not held the land for ten years since the return of *nulla bona,* the jury must find for the plaintiffs.' It is respectfully submitted that the plaintiff had the right to bring this equitable action at any time after the death of Jane Taylor, and adverse possession would commence to run when the defendants went into the exclusive possession of the land, claiming it as their own and exercising acts of sole ownership.

"9. Because his Honor, the presiding Judge, erred in refusing to charge defendant's first request to charge, as

follows: 'Where a creditor of a deceased person obtains judgment against the executor, when there are sufficient funds in his hands of the estate to pay the debts, and through the negligence of the creditors, the funds are lost to the estate, or are paid out with the assent of the creditors and after more than ten years from the recovery of the judgment an action is brought against the devisees who have been more than ten years in the sole and exclusive possession of such lands, such possession of the devisee and laches of the creditor will bar the right of the creditor to subject the land to the payment of his debt.'

"10. Because his Honor, the presiding Judge, erred in refusing to charge defendant's second request to charge, as follows: 'Where the devisees have been in sole and exclusive possession for more than ten years before an action is brought by a creditor of the testator to subject the land to the payment of his debts, and the devisee sets up his adverse possession as a defense, the action will be barred and the land cannot be subjected to payment of the debt due such creditor.'

"11. Because his Honor erred in refusing to charge defendants' third request to charge, as follows: 'Where a devisee goes into possession under the devise, he takes as a purchaser and not by descent, the character of the possession is changed, and the time necessary to establish his right to hold by adverse possession, to wit: ten years, begins to run when he gets into possession.'

"12. Because his Honor, the presiding Judge, erred in refusing defendants' fourth request to charge, as follows: 'That the legatees who purchased the property at the sale, could have been required by the probate judge to pay the purchase money, and the Court was not compelled to allow it credited on the shares of the legatees, in the estate.' "

It is unnecessary to consider the exceptions in detail, as exceptions 3 to 12, inclusive, relate to the defense set up in the answer, viz: that the defendants have been in the exclusive and adverse possession of the lands in question for ten

years, and have thereby acquired a title under the statute by adverse possession, independent of the title under the will of the testatrix, Jane Taylor. Upon that issue, the defendants' attorneys requested the presiding Judge to charge the jury: "2. Where the devisees have been in sole and exclusive possession for more than ten years before an action is brought by a creditor of the testator, to subject the land to the payment of his debts, and the devisee sets up his adverse possession as a defense, the action will be barred and the land cannot be subjected to the payment of the debt due such creditor. 3. When a devisee goes into possession of land under the devise, he takes as a purchaser and not by descent, the character of the possession is changed, and the time necessary to establish his right to hold by adverse possession, to wit: ten years, begins to run when he goes into possession."

In ruling upon these requests, the Circuit Judge stated that they were contrary to what he believed to be the law, and he, therefore, refused them. In this we think there was error. In a former decision of this Court in this case, reported in 60 S. C., 341, 38 S. E., 779, this defense was expressly recognized. The learned Judge who wrote the opinion of the Court uses this language: "It thus appears that lands descended or devised cannot be subjected to payment of ancestor's debts, when by partition or other acts of law the character of the possession is changed and becomes exclusive in the heirs or devisees," citing with approval *Bird* v. *Houze,* Speer's Equity, 250. And in further discussing this principle, the Court also quotes the language of Mr. Chief Justice McIver, in *Cleveland* v. *Mills,* 9 S. C., 436: "We may adopt and—to suit the facts in this case—adopt the language of Mr. Chief Justice McIver in a somewhat similar case (*Cleveland* v. *Mills,* 9 S. C., 436), and say that this is an action to subject the lands of the debtor, Mrs. Jane Taylor, in the hands of the defendants as devisees, to the payment of her debt; and it is founded upon the equity which creditors have to follow the assets into the hands

of the heirs and devisees to obtain payment of their debt. The question, therefore, is not, whether the defendants owe the debt—for there is no pretense that they ever did—but whether the testatrix ever owed it, not whether the right of action on the debt against the defendants is barred by the statute of limitations—for strictly there never was such a right of action, but whether the right of action against the testatrix or her executor is barred. The only defense, therefore, that could avail the defendants, would have been either to show that there was no such debt due by the testatrix, or that the action thereon against her executor was barred by the statute of limitations, which they might do, even though the executor should omit to interpose such a defense (*Bird* v. *Houze,* Speer Eq., 250) ; or to show such laches on the part of the plaintiff as would deprive him of the right to invoke the equity powers of the Court, as in *Mobley* v. *Cureton,* 2 S. C., 140 ; *or to have relied upon their own possession for the statutory period,* as in *Miller* v. *Mitchell,* Bail. Eq., 437' (*Cleveland* v. *Mills, supra,* 237)" (italics mine). Under the instructions of the Court, and the refusal to charge the second and third requests, this defense was practically withheld from the jury.

The more recent case of *Jennings* v. *Parr,* 62 S. C., 306, 40 S. E., 683, reaffirms this doctrine in these words: "Under *Cleveland* v. *Mills,* 9 S. C., 436, the defendant, Parr, can set up here only four defenses, to wit: 1. That W. H. Parr owed no such debt. 2. That the action thereon is barred by statute. 3. That the plaintiff creditor has been guilty of laches. 4. That the defendant, H. L. Parr's, possession has been for the statutory period." It is true that the fourth defense just quoted was not sustained, for the reason as stated by the Circuit Judge: "for the defendant, Parr, only went into possession in 1890, and this action was begun in 1894." Only four years of adverse possession.

The presiding Judge, after having refused the defendants' second and third requests to charge, instructed the jury that the plaintiffs' first and second requests were correct and so

charged the jury. They are: "That if the jury find from the testimony, that the defendants entered into possession of the land described in the complaint as devisees under the will of Jane Taylor, deceased, and have been holding it as such devisees ever since, then they held such land as trustees by operation of law for the creditors of Jane Taylor, and could not hold by adverse possessions, so as to bar the rights of the creditors of Jane Taylor, until the rights against the executor were exhausted. 3. That it is the law of this State that the heir or devisee cannot acquire title to land descended or devised, as against the debts of the ancestor or devisor, by a claim of adverse possession, as against the title devised or descended."

These propositions are wholly in conflict with the cases above cited, and practically negative the idea that a devisee can acquire such title to land by adverse enjoyment, so as to prevent the same from being subjected to the payment of the debt of the ancestor, even though such lands have been held adversely for the full statutory period. In this there was error. In Tyler on Ejectment, page 88, it is said: "Title to lands by adverse enjoyment owes its origin to and is predicated upon the statute of limitations, and although the statute does not profess to take an estate from one man and give it to another, it extinguishes the claim of the former owner, and quiets the possession of the actual occupant, who proves that he has occupied the premises under a color of title peaceably and quietly for the period prescribed by law. The statute of limitations, therefore, may properly be referred to as a source of title, and is really and truly as valid and effectual as a grant from the sovereign power of the State. The term 'limitations,' as used in the statutes of this country, is merely synonymous with the word 'prescription,' used in the Roman law, and means the time prescribed by statute within which a title to property may be acquired by adverse possession.

"Another well settled proposition in respect to the running of the statute of limitations is that the statute will run

against all persons, and no exception to the statute can be claimed, unless it is expressly mentioned in such statute." After reviewing the authorities, the author on same page draws this conclusion: "And the doctrine of the authorities very clearly is, that statute of limitations are to be strictly construed; and where the statute makes no exception, the court can make none on the ground of any inherent equity. or because it may appear to be reasonable that the statute should not run against any party in a given case. The rule is explicit and impressive in enforcing the duty on all courts, both in law and in equity, to render entire obedience to all the provisions of the statute of limitations; and all persons and all classes are alike barred by the statute, unless there is a saving clause in their favor."

A careful review of the statute, giving the right to hold land by adverse possession, does not limit the right "till a return of *nulla bona,* or until the executor has been exhausted." The words of the statute being: "Whenever it shall appear that the occupant, or those under whom he claims, entered into possession of premises under claim of title, exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question or upon the decree or judgment of a competent court, and that there was a continued occupation and possession of the premises, included in such instrument, decree or judgment, or some part of such premises under such claim for ten years, the premises included, shall be deemed to have been held adversely."

Now, if we consider that the issue submitted to the jury was an issue of title, and the defendants having set up in their answer a title by adverse possession, under the statute just quoted, we think it was error in the Court below to withhhold such defense from the jury. The very purpose of the statute is to place those who are in possession of land claiming such possession under a legal right on as high ground as a bald trespasser. If these defendants had repudiated their mother's will and had simply held their possession,

not as rightful owners, but as wrong doers, there is no question that their title would have been valid.

There is a wide distinction between the effect of the statute of limitations in vesting rights to real property and its operation as a defense to contracts. This distinction is clearly pointed out in *Jones* v. *Jones,* 18 Ala., 253, quoted with approval in *Campbell* v. *Holt,* 115. U. S., 625, and is thus stated: "But it is contended that there is no difference between the effect of the statute when applied to property held adversely and applied to contracts for the payment of money. It is, however, sufficient to observe that when property, whether real or personal, is held adversely, the statute operates on the title, and when the bar is complete, the title of the original owner is defeated, and the adverse possessor has the complete title."

In *Busby* v. *Railroad Company,* 45 S. C., 312, 23 S. E., 50, our own Court held, that one in adverse possession of land for the statutory period, had such a title by virtue of such adverse possession as may be affirmatively asserted against one not protected by some disability. And we might add, that the disability referred to is such as is specially provided in the statute itself. Mr. Chief Justice McIver, who delivered the opinion, uses this language: "The precise question, as we understand it, intended to be presented by this appeal is, whether a party, whose claim rests upon the assertion of title to real estate, can establish such claim by proof of adverse possession for the statutory period, without first showing that the title to the real estate in question has passed out of the State. In the determination of this question, two inquiries are presented: First, whether adverse possession of real estate for the statutory period confers a positive affirmative title, or simply operates as a bar to the claim of any person seeking to dispossess the person in possession. It is not to be denied that, at one time, it seemed to be supposed that adverse possession operated simply as a bar to an action to recover possession of the land. Accordingly we find in the book the expression, that the statute of

limitations may be used as a shield of defense, not as a weapon of offense.    But, on the other hand, we find in our own cases, which will be hereinafter referred to, *dicta,* at least, which plainly recognize the doctrine that adverse possession of real estate for the requisite period does confer positive title, which may be asserted affirmatively.    As it is said by Mr. Justice Miller, in *Campbell* v. *Holt,* 115 U. S. Rep., at pages 622-3 : 'By the long and undisturbed possession of tangible property, real or personal, one may acquire a title to it, or ownership superior in law to that of another who may be able to prove an antecedent and, at one time, paramount title. * * * Mr. Angell, in his work on Limitations of Actions, says that the word limitation is used in reference to the time which is prescribed by the authority of law, during which a title may be acquired to property by virtue of a simple adverse possession and enjoyment, or the time, at the end of which no action of law or suit in equity can be maintained.    Prescription, therefore (he says), is of two kinds—that is, it is either an instrument for the acquisition of property, or an instrument of an exemption only from the servitude of judicial process. * * * The English and American statute of limitation have, in many cases, the same effect, and if there is any conflict of decisions on the subject, the weight of authority is in favor of the proposition that, where one has the peaceble, undisturbed, open possession of real or personal property, with an assertion of its ownership for the period which, under the law, would bar an action for its recovery by the real owner, the former has acquired a good title, a title superior to the latter, whose neglect to avail himself of his legal rights has lost him his title.    This doctrine has been repeatedly asserted in this Court (citing the cases).    It is the doctrine of the English Courts, and has been often asserted in the higher courts of this State of the Union.'    This doctrine is expressly recognized in *Cantey* v. *Platt,* 2 McC., 260, in which Judge Huger, in delivering the opinion of the Court, says : "To enable a plaintiff to succeed in his statutory claims to land, he must prove that he

had possesion of the land the full time required by the statute law,' going on to say that such possession must be adverse, and the extent of it shown. That case is cited with approval by O'Neale, J., in *King* v. *Smith,* Rice, at page 14, where the same language is quoted. The same doctrine was recognized in *McLeod* v. *Rogers,* 2 Rich., at page 23; *Turpin* v. *Brannan,* 3 McC., where Nott, J., at page 267, says: 'After the quiet enjoyment of land for five (now ten) years, the law presumes a title in the occupant which may have been lost by accident. *The possession is substituted in place of title'* (italics ours). *Allen* v. *Johnson,* 2 McC., 495; *Congdon* v. *Morgan,* 14 S. C., 587; *Bowen* v. *Team,* 6 Rich., where, at page 301, O'Neall, J., uses this language: 'I hold that ten years adverse possession of land is a conveyance of the fee resting in the owner thus barred. * * * In *Wagner* v. *Aitorm,* Rice, 105, Brown was the grantee under whom the plaintiffs claimed; they could not connect themselves by conveyances with him, but they proved ten years adverse possession under color of title in their ancestor. It is said by the Judge who tried the cause, in his charge to the jury, "that the true view of the case was to regard Wagner as having entered under Canter's and Westbury's conveyances, who for aught that certainly appeared might be strangers to Brown, but who had undertaken to convey his title, and, under a title so derived, if he had an actual adverse possession of a part of the grant for more than five years before 1812, this was equivalent to the most perfect conveyance of the Brown grant to him against all persons not laboring under some disability." By the second ground of appeal this ruling was drawn directly in question. The Court of Appeals unanimously sanctioned it. In *Williams* v. *McCaliby,* Cheves, 200, the same ruling is made to carry to Lacy the oldest grant to Lowndes, and which was necessary to entitle the plaintiffs to recover. It was neither questioned by the appeal nor by the Court. On authority, therefore, I suppose I might say the point is settled. But tested by reason the same result must follow: 'A is in the possession under color of title of

the land of B for the statutory period; B cannot recover it against him or anybody else. Why? His title is gone, is the answer. Where is it? It must be in possession; for there is no other person who can have the right of possessing and enjoying the land. Again, land is granted to B, C, a stranger to him, comes into actual possession under a conveyance from D; holds possession for more than ten years, and then E intrudes on him, and he brings trespass to try titles. Does not every lawyer know that the grant to B, D's conveyance to C, and ten years possession in him, give, so far as title is concerned, a right to recover? That being so, must he not by his possession acquire, in legal contemplation, the title of B? Can there be any better conveyance?' The foregoing, while perhaps not distinctly deciding the point, abundantly shows that the drift of judicial opinion is very decidedly towards the view that a person who has been in adverse possession of the land for the statutory period thereby acquired a good and valid title, which may be affirmatively asserted against one not protected by some disability; that certainly was the opinion of those eminent Judges, the late Mr. Justice Miller and the late Chief Justice O'Neall, and we think their view is fully sustained by reason. But, in addition to this, we think the point has been directly decided in *Harrelson* v. *Sarvis,* 39 S. C., 14, 37 S. E., 368, in which Mr. Justice McGowan uses these words: 'It is certainly true that, in an action for the recovery of land, the plaintiff must recover, if at all, upon the strength of his own title and not the weakness of that of his adversary. But it is not necessary that, under all circumstances, there should be an unbroken chain of paper title back to the *grant.* The statute of limitations has a double aspect; besides affording a shield of defense, it may under certain circumstances give title capable of being asserted actively;' and on the next page, it is held that an adverse possession of twelve years entitled the plaintiff to recover the land of which she had such possession. This doctrine is explicitly recognized in the very recent case of *Mays* v. *R. R. Co.,* 40 S. C., 517."

The more recent case of *Sutton* v. *Clark*, 59 S. C., 440, 38 S. E., 150, reaffirms *Busby* v. *Railroad Co.*, and quotes the language of Mr. Chief Justice McIver with approval.

We are impressed with the idea that at the time the learned Circuit Judge charged the jury, his thoughts were directed to the statutes of limitation, as they operated as a defense to contracts and not as vesting rights to real property; for in his general charge we find this language, "The statute of limitations comes after ten years and it means to restrict, and it says you must stop, there must be an end to all these things; and if not for the statutes they would go on forever; but these acts of limitations are of various forms which stop lawsuits at the end of a certain time. I say, that after the executor is exhausted and the plaintiff does nothing for ten years, he would be barred." Again, we find in the charge this expression, "and the statute of limitations do not begin to run against them or in favor of the other party until the executor was exhausted. Suppose you have a note against your neighbor and you sit down—that six years have elapsed—your action is barred or right is barred."

The issue made by the pleadings was that the defendants had acquired a title to the land sought to be subjected to the payment of the debts of the ancestor or devisor. That they had been in the adverse use and enjoyment of said land for a period of more than ten years, and that this gave them a title independent of the will; that from this adverse enjoyment for the statutory period their title had ripened and changed from one under a devise to one under the statute to quiet title, a title acquired by adverse possession. In the instructions given the jury this issue has not been submitted to the jury. In other words, the jury was not properly charged as to the effect of the plea of adverse possession. The effect of such a plea, if established, would not only act as a bar to the plaintiffs' cause of action, but would vest a title in the defendants that might be affirmatively asserted, and would so shield the occupant in his possession as to prevent any interference or disturbance of his possession.

For the foregoing reasons I cannot assent to the proposition announced by Mr. Justice Jones, that the answer does not raise any legal issue of title by adverse possession, which is triable by jury as matter of right, or that the answer sets up no title paramount to the plaintiffs' equity. The answer sets up a defense provided for by section 102 of the Code of Civil Procedure, and until that section is repealed, I shall incline to the view that an occupant under claim of title may acquire a title by adverse enjoyment as much so as a trespasser, even against one holding a debt against the ancestor; or, as in *Garvin* v. *Garvin,* if the debt is in judgment, where it was held that a title by adverse possession could be acquired against a judgment, the reason being that the statute so declares.